BARBARA ABELES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 37192-86.         Filed December 7, 1988.

Bruce I. Hochman, William M. Weintraub, and Dennis L. Perez, for the petitioner.
Joyce Sugawara, for the respondent.

OPINION

FAY, *Judge:* Respondent determined deficiencies in petitioner's Federal income tax as follows:

| Year | Deficiency |
| --- | --- |
| 1975 | $48,591.00 |
| 1976 | 31,892.82 |
| 1977 | 29,844.00 |

In two previously docketed cases, *Harold A. Abeles and Barbara Abeles v. Commissioner,* docket Nos. 1372-81 and 4433-83, pertaining to the Abeles' 1976, and 1975 and 1977 tax years, respectively, this Court granted respondent's motions to dismiss for lack of prosecution and entered decisions in respondent's favor in the reduced amounts of $24,008, $19,790.32, and $23,809, with respect to the Abeles' 1975, 1976, and 1977 taxable years, respectively. Such decisions were subsequently vacated, however, as they related to Barbara Abeles, in *Abeles v. Commissioner,* T.C. Memo. 1988-25, with respect to the 1976 tax year, and in *Abeles v. Commissioner,* 90 T.C. 103 (1988), with respect to the 1975 and 1977 tax years. The decisions in respondent's favor in those docketed cases were so vacated because Barbara Abeles alleged, and this Court found, that she never filed petitions, nor ratified those that were filed, in either of the cases, and that Barbara Abeles was, therefore, not a party to those actions.[1]

Subsequent to having the decisions which were previously entered against her in docketed cases numbered 1372-81 and 4433-83 vacated, Barbara Abeles filed a petition commenc-

---

[1] An evidentiary hearing was held on Sept. 11, 1987, on the issues concerning whether Barbara Abeles was a proper party in the cases bearing docket Nos. 1372-81 and 4433-83. Because this Court foresaw petitioner's filing a petition commencing the present action, and for reasons of judicial economy, this Court also heard testimony and accepted evidence relating to the jurisdictional issues here raised.

ing the present action seeking a redetermination of the above-described deficiencies as such relate to her. This matter now comes before us on the parties' cross-motions to dismiss the present action for lack of jurisdiction. The issue for decision is whether this Court has jurisdiction over the subject matter of petitioner's 1975, 1976, 1977, and 1978 taxable years.

At the time the petition in this case was filed, Barbara Abeles resided in Encino, California.

Barbara Abeles and Harold A. Abeles (hereinafter referred to collectively as the Abeles, or singularly as petitioner and Mr. Abeles, respectively) were married in 1972, separated in 1982, and divorced sometime thereafter. With respect to their 1975, 1976, and 1977 taxable years, the Abeles filed joint Federal income tax returns.

In 1980, respondent determined deficiencies in the Abeles' Federal income tax for the 1976 taxable year and, on October 15, 1980, respondent sent a single joint notice of such deficiency determination to:

> Harold A. Abeles and
> Barbara Abeles
> 315 South Beverly Drive
> Beverly Hills, CA 90212

(the Beverly Drive address). Such was the address of Mr. Abeles' law office at that time, and was not the Abeles' personal residence. Petitioner and Mr. Abeles had maintained a personal residence together at 16154 High Valley Place, Encino, CA 91316 (the High Valley address), from 1974 until May 15, 1982, when, because of a marital separation, Mr. Abeles moved from the High Valley address. As of the date of trial, petitioner had continued to reside at the High Valley address.

In 1982, petitioner undertook to file a Federal income tax return separately for her 1981 taxable year. On April 15, 1982, petitioner's accountant filed with respondent an application for an automatic extension of time to file petitioner's 1981 Federal income tax return. The application for extension of time to file a return was granted automatically for a period of 2 months. On June 15, 1982, petitioner filed with respondent her Federal income tax return for

taxable year 1981. Such return was in petitioner's name only. Although petitioner's filing status, as reflected by the 1981 tax return, was that of married, filing separately, the return required that petitioner also provide the name and taxpayer identification number (TIN)—i.e., social security number—of her spouse. This information was provided by petitioner. The address given for petitioner on both the request for extension and the 1981 tax return was in care of her accountants as follows:

Barbara Abeles
c/o Segel, Goldman & Macnow, Inc.
9348 Santa Monica Boulevard
Beverly Hills, CA 90210

(the Santa Monica Boulevard address).

Following the filing of petitioner's above-described request for extension and 1981 tax return, respondent made a determination of deficiency with respect to petitioner and Mr. Abeles' 1975 and 1977 joint tax returns. Respondent sent a single joint statutory notice of deficiency concerning such determinations to:

Harold A. Abeles and
  Barbara Abeles
291 South La Cienega Boulevard. L 14 House
Beverly Hills, CA 90212

(the La Cienega address) on November 30, 1982. Such address was a new address for the law offices of Mr. Abeles which was established when he moved his business from the Beverly Drive address. Mr. Abeles had his law offices located at the La Cienega address for approximately 1 year preceding the date such notice of deficiency was mailed. It was during such 1-year period that respondent had been notified of Mr. Abeles' use of the La Cienega address for tax purposes.

During their marriage, petitioner relinquished all authority to Mr. Abeles with respect to their tax and financial matters. Petitioner was not even aware that Federal income tax returns were filed on her behalf for the years before us. Around the time the notices of deficiency were mailed and the petitions and amended petitions were filed in docketed

cases 1372-81 and 4433-83, petitioner and Mr. Abeles were in the process of obtaining a divorce. Mr. Abeles never informed petitioner of the receipt of the notices of deficiency, of the filing of petitions and amended petitions in response to such notices, or of the decisions which had been entered against the Abeles, jointly and severally, in connection with such petitions. Petitioner did not become aware of any of these events until after the Internal Revenue Service (the IRS) levied her bank account and placed a lien upon her home in 1986.

When a husband and wife file a joint return, each spouse's TIN is reported upon the return filed. The TIN which appears first on the return is considered by the IRS as the "primary" TIN, and the second TIN is considered the "spousal" TIN. Certain information reported upon the joint return so filed, including the address of the joint taxpayers, is entered into the IRS's computer files under the primary TIN only; none of such information is entered by the IRS into its computer files maintained under the spousal TIN. The record retained with respect to the joint return under the primary TIN is considered by the IRS to be the *joint* tax account of the husband and wife so filing.

If the person bearing the spousal TIN subsequently files, with respect to a later taxable year, a return in the status of married, filing separately, and if such a separate return reflects an address for the spousal taxpayer different from that address reported upon the previously filed joint return, such new address is not entered into the IRS's computer files maintained with respect to the joint tax account of the spousal taxpayer and their previous joint filer. The new address reported by the spousal taxpayer when filing separately is entered into the IRS's computer under only the files maintained concerning the spousal TIN. However, if the person bearing the primary TIN also files, with respect to a later taxable year, a separate return reflecting an address different from that used on the previously filed joint return, such new address is entered into the IRS's computer files maintained with respect to the joint tax account of both the primary and spousal taxpayers. This is because the joint tax account is, again, maintained under only the primary TIN, and is not cross-referenced to the spousal TIN.

When petitioner and Mr. Abeles filed joint Federal income tax returns with respect to their 1975, 1976, and 1977 taxable years, Mr. Abeles' TIN, because it was listed first on the returns for those years, was considered to be the primary TIN, and petitioner's TIN was considered to be the spousal TIN. Certain information reported upon those returns, including the address the Abeles were then using for tax purposes, was entered into the IRS's computer system under Mr. Abeles' TIN only. Subsequently, when petitioner filed her 1981 tax return as married, filing separately, all information concerning her 1981 return, including petitioner's new tax address, was entered by the IRS into its computer system under petitioner's TIN only. None of the information reported by petitioner on her separate return was entered into the IRS's computer under petitioner's joint tax account with Mr. Abeles. Neither was such information, concerning petitioner separately cross-referenced with such joint tax account.

On November 30, 1982, when respondent sent the notice of deficiency concerning the Abeles' 1975 and 1977 taxable years, if respondent had caused his computer to produce a transcript of the Abeles' joint account, the transcript that would have been generated would have contained only that information entered into the computer under the primary taxpayer's, Mr. Abeles', TIN. Such transcript would neither contain, nor cross-reference, the information petitioner provided when filing separately on June 15, 1982, i.e., the joint tax account transcript would not have reflected petitioner's use of a new address for tax purposes when she last filed. The address generated from a transcript of the Abeles' joint tax account would have been the La Cienega address, the last address of which respondent had been notified with respect to the joint account's primary TIN, Mr. Abeles. On the other hand, if, on the same date, the IRS had caused its computer to produce a transcript concerning petitioner filing separately, by using petitioner's TIN alone, such transcript would have reflected petitioner's Santa Monica Boulevard address, the address petitioner used on her most recently filed return.

At trial, respondent offered into evidence an "IRS national computer center transcript," current as of August 6, 1987,

concerning the joint tax account of petitioner and Mr. Abeles. Such transcript reflected that the filing status of the Abeles was still that of married, filing jointly. Further, such transcript reflected one address for both Abeles: 16501 Simmons Street, Granada Hills, California. Such address was the last address of which the IRS was notified with respect to Mr. Abeles prior to trial; petitioner has never used the Simmons Street address for communications with respondent.

Petitioner and respondent both assert that this Court lacks jurisdiction over the subject matter of petitioner's 1975, 1976, and 1977 taxable years. Petitioner contends that jurisdiction is lacking with respect to taxable years 1975 and 1977 because, petitioner asserts, the notice of deficiency mailed concerning those years was invalid as against her since a duplicate original of such notice was not sent to her last known address. Further, petitioner contends that jurisdiction is lacking with respect to her 1976 taxable year because, petitioner asserts, the statute of limitations for assessment with respect to such year has expired. Respondent contends that this Court lacks jurisdiction over petitioner's 1975, 1976, and 1977 taxable years because, as agreed by the parties, the petition filed herein was untimely. Further, respondent contends jurisdiction is lacking with respect to petitioner's 1978 taxable year because, respondent asserts, no notice of deficiency has been issued with respect thereto.

It is well settled that in order to maintain an action in this Court there must be a valid notice of deficiency and a timely filed petition. See *Pyo v. Commissioner*, 83 T.C. 626, 632 (1984); *Mollet v. Commissioner*, 82 T.C. 618, 623 (1984), affd. without published opinion 757 F.2d 286 (11th Cir. 1985); *Keeton v. Commissioner*, 74 T.C. 377, 379 (1980).

Section 6212 delineates the requirements concerning to whom a notice of deficiency is required to be sent such that the notice will be considered "valid." Under section 6212(a),[2] respondent is authorized to send a notice of

---

[2]Sec. 6212(a) provided:

SEC. 6212(a). IN GENERAL.—If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, 44, or 45, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.

deficiency to a taxpayer by certified or registered mail. Under section 6212(b)(2),

> In the case of a joint income tax return filed by husband and wife, such notice of deficiency may be a single joint notice, except that if the Secretary has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, a duplicate original of the joint notice shall be sent by certified mail or registered mail to each spouse at his last known address.

Although the language of section 6212(a) is precatory, when read together with section 6213,[3] it is clear that respondent may not assess a tax deficiency, except in certain circumstances not here applicable,[4] until he has provided the taxpayer notice of respondent's determination thereof in compliance with section 6212.

If respondent notifies a taxpayer in compliance with section 6212, such taxpayer has 90 days[5] after the mailing of the notice of deficiency within which to petition this Court for a redetermination of the deficiency determined by respondent. Sec. 6213(a). If a taxpayer files a petition for redetermination within the prescribed time period, this Court has jurisdiction to determine the validity of respondent's deficiency, and respondent is, except in certain circumstances not here applicable,[6] estopped from making any assessment in respect of the deficiency, and from effecting any levy or initiating a proceeding in any Court for that deficiency's collection, until the decision of this Court becomes final. Sec. 6213(a). On the other hand, if a

---

[3]Sec. 6213(a) provided:

SEC. 6213(a). TIME FOR FILING PETITION AND RESTRICTION ON ASSESSMENT.—Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for redetermination of the deficiency. Except as otherwise provided in section 6851, 6852, or 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B, chapter 41, 42, 43, 44, or 45 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, not until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

[4]See sec. 6851 termination assessment procedures, and sec. 6861 jeopardy assessment procedures.

[5]Such time limit is 150 days if the notice is addressed to a person outside the United States.

[6]See, for example, sec. 6861(c) where amounts are assessable before a decision of this Court where collection of the tax is in jeopardy.

taxpayer declines, or fails, to file a petition for redetermination within the prescribed 90-day period, then this Court has no jurisdiction over the deficiency and respondent may then assess and begin collection activities. *Healy v. Commissioner,* 351 F.2d 602 (9th Cir. 1965); sec. 6213(c).[7] The 90-day period for the filing of a petition for redetermination does not begin to run, however, unless respondent provides the taxpayer notice of his deficiency determination in compliance with section 6212. *Pyo v. Commissioner, supra; Mollet v. Commissioner, supra; Keeton v. Commissioner, supra.*

In order to determine whether this Court has jurisdiction over the subject matter of petitioner's 1975 and 1977 taxable years, we must first determine whether respondent was required, pursuant to section 6212(b)(2), to send duplicate originals of the joint statutory notice of deficiency concerning such taxable years to each of the Abeles' last known addresses. Under section 6212(b)(2), respondent is required to send duplicate originals, rather than a single joint notice, "if the Secretary has been notified by either spouse that separate residences have been established." Thus, the question is: What constitutes sufficient notice that "separate residences have been established?"

Respondent focuses upon the literal wording of the statute, and contends that the statutory language "notified * * * that separate residences have been established" should be interpreted as: "notified that the spouses no longer cohabit." From this, respondent argues that duplicate originals of the joint notice are required to be sent only where respondent has been notified that the joint filers have discontinued living together.

Petitioner contends that such statutory language should be interpreted as: "notified that each spouse maintains separate last known addresses." Based on this interpretation, petitioner argues that duplicate originals of the joint notice of deficiency are required to be sent to each spouse's last known address whenever respondent has been notified

---

[7]Sec. 6213(c) provides:

SEC. 6213(c). FAILURE TO FILE PETITION.—If the taxpayer does not file a petition with the Tax Court within the time prescribed in subsection (a), the deficiency, notice of which has been mailed to the taxpayer, shall be assessed, and shall be paid upon notice and demand from the Secretary.

that each joint filer maintains a last known address different from the other joint filer's.

While we recognize that, in general, the plain language of a statute controls, we do not accept respondent's interpretation or application of the statute, as it is one which exalts the statute's form at the demise of its substance. As the Supreme Court has stated:

> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. * * * [*United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 543 (1940), quoting *Ozawa v. United States,* 260 U.S. 178, 194 (1922). (Fn. refs. omitted.)]

We shall do the same in this instance.

By enacting sections 6212 and 6213, Congress intended to provide a means by which a taxpayer is provided notice of a tax deficiency determination made by respondent such that the taxpayer is afforded an opportunity to avail himself or herself, if desired, to a forum in which such determination of deficiency could be litigated prior to the taxpayer's having to make payment of the tax liability. See *Dolan v. Commissioner,* 44 T.C. 420, 433 (1965). Congress' focus, when it considered what type of notice should be required to be sent in connection with a joint return, was upon the type of relationship which is presumed to exist as between two joint filers. Congress believed that most marital relationships maintain open and frequent communication between the spouses such "that receipt of the notice by either spouse would be well calculated to equal notice to both." *Cohen v. United States,* 297 F.2d 760, 773 (9th Cir. 1962). Thus, Congress provided that respondent must send a single joint notice to the joint filers as the general rule. Congress also recognized, however, that not all marital relationships continued to deserve such a presumption of open communication. It is for this reason that Congress

provided for the issuance of a duplicate original of the joint notice to each of the joint filers. That is, Congress provided that duplicate originals of the joint notice of deficiency should be sent to each spouse's last known address when, by reason of communications the Commissioner has received from the taxpayer, it is evident that a single joint notice could not reasonably be expected to constitute notice to both joint filers. See *Dolan v. Commissioner, supra* at 434, where we said that "The provision relating to the sending of duplicate originals of the joint notices where respondent has been notified that the spouses have *separate addresses* clearly was intended to assure that each spouse received actual notice, if respondent chose to send a joint notice of deficiency."[8]

If we were to adopt respondent's interpretation of section 6212(b)(2)—that the focus is upon whether notice had been given that the spouses no longer cohabited—we would not be giving proper deference to Congress' intent. Such an interpretation would, as it did in this case, lead to respondent's sending a statutory notice to only one of the joint filers' last known addresses, i.e., the primary taxpayer's last know address, despite the spousal taxpayer's having previously indicated to respondent that he or she was using a separate address to which respondent should have reasonably believed the spousal taxpayer wanted all communications sent. It would make no sense to say that the notice required of the taxpayer to cause duplicate originals of the joint notice to be issued is one which relates to the taxpayer's living arrangements, when it has long been the law that the validity of a notice of deficiency under section 6212 depends upon that notice's being mailed to the taxpayer's last known address, and when it has long been recognized that one's last known address is not necessarily one's residence.

In addition, and more importantly, respondent's interpretation would also lead to respondent's discordant conclusion that it is possible for a spousal taxpayer to have *two* last known addresses. Respondent argues that, without notice that the joint filers no longer cohabit, it would be appropriate to continue to use the spousal taxpayer's last known

---

[8]See also *Reno v. Commissioner,* T.C. Memo. 1980-255.

*joint* address, as such was determined from an examination of the joint tax account records maintained under the primary TIN, for communications concerning that taxpayer's jointly filed returns. Further, respondent contends that it would only be appropriate to use the spousal taxpayer's *separate* last known address, as determined from a reference to the computer records maintained under the spousal TIN, for communications concerning that person's subsequently filed separate returns.

We have consistently held that a taxpayer's last known address is defined as "the last known permanent address or legal residence of the taxpayer, or the last known temporary address of a definite duration or period to which *all* communications during such period should be sent." *Weinroth v. Commissioner,* 74 T.C. 430, 435 (1980) (emphasis in original); *McCormick v. Commissioner,* 55 T.C. 138, 141 (1970). From such a definition, it is clear that respondent can have, with respect to any one taxpayer, only one last known address on the date that a notice of deficiency is issued.[9] To argue that it is reasonable to assume that a taxpayer wishes communications from the IRS to be sent to one of several addresses, depending upon the filing status utilized in those years, is absurd. A "last known" address is precisely that; if respondent knows of one address for a taxpayer and is then notified of another address for the same taxpayer, such other address supersedes the previous address and becomes, as far as respondent is concerned, that taxpayer's "last known address," regardless of the filing status used by the taxpayer when using the different addresses.

To give effect to the policy behind section 6212(b)(2), and to avoid the incongruous results another interpretation of the statute would provide, we hold that compliance with such section requires respondent to send duplicate originals of the joint notice of deficiency to each spouse's last known address whenever respondent has been notified, prior to the time that the notice of deficiency is to be issued, that the joint filers maintain separate last known addresses. Further,

---

[9]See *Karosen v. Commissioner,* T.C. Memo. 1983-540, for an explanation of how respondent should proceed when confronted with what appears to be multiple last known addresses for a lone taxpayer.

this rule shall apply so long as respondent is given notice that the two spouses do not share the same last known address, even if respondent is given notice of only one of such spouses' last known addresses. See *Camous v. Commissioner*, 67 T.C. 721, 729 (1977); *Reno v. Commissioner*, T.C. Memo. 1980-255.

Thus, to determine whether respondent was required to send duplicate originals of the joint notice to each of the Abeles' last known addresses, we must determine whether petitioner had, prior to the date the notice of deficiency was mailed, given respondent notice of a new last known address different from that of Mr. Abeles. This is because, if petitioner had not so given respondent notice of a new last known address, she could not be said to have taken the action which would require respondent to send such duplicate originals of the joint notice to each of the Abeles.

In addition to our definition of a last known address, as such was expressed in *Weinroth v. Commissioner, supra,* we have held that, as a general proposition, a taxpayer's "last known address" is that address to which, in light of all surrounding facts and circumstances, respondent reasonably believed the taxpayer wished the notice of deficiency to be sent. *Looper v. Commissioner*, 73 T.C. 690 (1980). Further, it has heretofore been our position that respondent is entitled to treat the address of the taxpayer, appearing on the return under examination, as the taxpayer's last known address, within the meaning of section 6212, absent "clear and concise notification" of an address change. *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. 367, 374 (1974), affd. 538 F.2d 334 (9th Cir. 1976).

If respondent is notified of a change of address, however, respondent must exercise reasonable care and diligence in ascertaining, and mailing the notice of deficiency to, the correct address. *Keeton v. Commissioner, supra* at 382; *Alta Sierra Vista, Inc. v. Commissioner, supra* at 374; *O'Brien's v. Commissioner*, 62 T.C. 543, 550 (1974).[10] When attempting to reasonably determine a taxpayer's last known

[10]See Borison, "The Evolving Due Diligence Requirement of the Service in Determining a Taxpayer's Last Known Address," 41 Tax Law Rev. 111 (1985), for an in-depth discussion of what has previously been considered, by this and other courts, to be: (1) "Clear and concise notification" of a change of address; and, (2) an exercise of due diligence by the Internal Revenue Service in determining a taxpayer's last known address.

address, respondent is then entitled to rely upon those documents submitted to him by the taxpayer. *Brown v. Commissioner,* 78 T.C. 215, 219 (1982). However, in connection with whether the taxpayer has given the requisite notice of a change in address, we have heretofore taken the position that the filing of a return, which is more recent than, and which bears an address different from that appearing on, the return under examination, does not constitute, for purposes of mailing a notice of deficiency with respect to that return under examination, the necessary notice of an address change. *Weinroth v. Commissioner, supra* at 436-437; *Budlong v. Commissioner,* 58 T.C. 850, 852-853 (1972).

This Court's position with respect to the effect to be given a more recently filed return for purposes of determining a taxpayer's last known address was initially set forth in *Budlong v. Commissioner, supra.* In that case, the taxable year at issue was 1968, and the subsequently filed return was for the 1969 taxable year. The 1969 return had been filed only 20 days prior to the date the notice of deficiency concerning 1968 was mailed. In determining whether the 1969 return was sufficient notice of an address change, we held:

> Petitioners' filing of their 1969 return with the North-Atlantic Service Center is not sufficient notification to respondent. The service center does not have any responsibility with respect to the auditing of returns or the issuing of statutory notices of deficiency. The service center provides the means for handling in an effective, administrative fashion the millions of returns to be filed with the district directors within its realm. The Code does not require a check with a service center for verification of the "last known address" of a taxpayer prior to the issuance of a statutory notice. *At best, petitioners' filing of their 1969 return would, upon final processing, indicate to respondent that for their 1969 taxable year correspondence to petitioners should be directed to the address thereon.* [*Budlong v. Commissioner, supra* at 852-853; emphasis added.]

Although not expressly stated in the *Budlong* opinion, our holding that a more recently filed return was not notice of a change of address was based, in part, upon to whom we were willing to attribute knowledge of the information contained in a recently filed return. At the time of the *Budlong* opinion, in 1972, the computer capabilities of the IRS were such that an agent of respondent responsible for

issuing a notice of deficiency did not have the ability to conduct, within a reasonable time, a search of the IRS's computer files for a more recent address for the taxpayer. Today, however, the state of the IRS's computer capabilities is such that a computer search of the information retained with respect to a certain taxpayer, including his or her last known address, may be performed by respondent's agent without unreasonable effort or delay. See *Crum v. Commissioner,* 635 F.2d 895, 900 (D.C. Cir. 1980), revg. an unreported order of this Court, wherein the District of Columbia Circuit Court of Appeals recognized that "a search of the computer files for a taxpayer's most recent address would take less than a minute today, [whereas] that same task would have taken approximately six weeks in 1972."

In contrast to our position, the U.S. Court of Appeals for the Ninth Circuit has held:

> A taxpayer's last known address is that on his most recent return, unless the taxpayer communicates to the IRS "clear and concise" notice of a change of address. See *McPartlin v. Commissioner,* 653 F.2d 1185, 1189 (7th Cir. 1981); *Alta Sierra Vista, Inc. v. Commissioner,* 62 T.C. 367 (1974), *aff'd mem,* 538 F.2d 334 (9th Cir. 1976). [*United States v. Zolla,* 724 F.2d 808, 810 (9th Cir. 1984).]

The Ninth Circuit has adopted this standard partly because it has recognized the advancements made in the computer capabilities of the IRS, and partly because it has consistently applied ordinary agency principles to governmental departments for purposes of determining to whom knowledge should be attributed. See *Cool Fuel, Inc. v. Connett,* 685 F.2d 309 (1982), citing *Welch v. Schweitzer,* 106 F.2d 885 (9th Cir. 1939), and *Crum v. Commissioner, supra.* As early as 1939, the Ninth Circuit said:

> This recognized continued relationship of the taxpayer to the Treasury created by statute * * * made available in this case to the Commissioner the true residence address of the taxpayer *as shown in his later returns.* The application of ordinary business principles to the tax business of the government would seem to require the Commissioner to avail himself of the facilities of his business organization in the performance of his duty to mail the notice of deficiency. [*Welch v. Schweitzer,* 106 F.2d 885, 887 (9th Cir. 1939); emphasis added.]

This Court has previously intimated that we may, at some point, attribute knowledge of an address on a more recently filed return to the agent responsible for mailing a notice of deficiency. In *Pyo v. Commissioner, supra,* we were faced with a factual pattern in which the taxpayers had filed a Federal income tax return for the years at issue which reflected an "F" Street address with the Fresno, California, Service Center. The taxpayers subsequently moved to a "C" Street address and filed Federal income tax returns reflecting such address with the Fresno Service Center. Subsequently, the Commissioner's Los Angeles District Director's Office sent a notice of deficiency to the taxpayers, for the years at issue, to the taxpayers' F Street address. With respect to such facts, we stated:

It is * * * relevant to observe that at the time the notice of deficiency was first mailed to [the taxpayers] at their [F Street] address, the Los Angeles District Director's Office employees who mailed this document to petitioners had access to the Fresno Service Center computer system which, at that time, contained their [C Street] address. Although, at this juncture, we will not attribute the information contained in this computer system to such employees and require them to consult this system in order to satisfy the "last known address" investigative responsibilities, the time may come when this is appropriate. See *Weinroth v. Commissioner,* 74 T.C. 430, 437 n. 7 (1980). * * * [*Pyo v. Commissioner, supra* at 637 n. 10.]

In *Weinroth v. Commissioner, supra* at 437 n. 7, we said:

Although petitioners adduced some evidence that the Internal Revenue Service now employs a computerized system to update its files from the filing of subsequent returns, this evidence was by no means sufficient for us to reconsider our holding in *Budlong* [*v. Commissioner, supra*]. Petitioners did not show whether this system was in use when the notice of deficiency was issued nor the efficacy of the system.

To the contrary, in the case at hand the evidence shows that the IRS's computer system was available to respondent's agent responsible for mailing the notice of deficiency, and that the system would have reflected the address from petitioner's most recently filed return had such agent caused a computer search of petitioner's TIN. Considering the technological advancement respondent's computer system has undergone, and the efficacy such system has achieved, we hold that the time has come for us to adopt a

new rule with respect to whether a more recently filed return should be considered notice of a change of address.

For purposes of determining whether a notice of deficiency has been properly mailed to the taxpayer's last known address, we now hold that a taxpayer's last known address is that address which appears on the taxpayer's most recently filed return, unless respondent has been given clear and concise notification of a different address. For these purposes, however, we hold that a taxpayer's "most recently filed return" is that return which has been properly processed by an IRS service center[11] such that the address appearing on such return was available to respondent's agent when that agent prepared to send a notice of deficiency in connection with an examination of a previously filed return. Further, we hold that the address from the more recently filed return is *available* to the agent issuing a notice of deficiency with respect to a previously filed return, if such address could be obtained by a computer generation of an IRS computer transcript using the taxpayer's TIN in the case of a separately filed return, or *both* taxpayers' TINs in the case of a previously filed joint return.

In so holding, we are merely reiterating our position that what is of significance is what respondent knew at the time the statutory notice was issued (*Alta Sierra Vista, Inc. v. Commissioner, supra*), and attributing to respondent information which respondent knows, or should know, with respect to a taxpayer's last known address, through the use of its computer system.

### *Taxable Years 1975 and 1977*

With respect to the notice of deficiency mailed November 30, 1982, concerning petitioner's 1975 and 1977 taxable years, petitioner contends that respondent was notified of petitioner's use of a new address by: (1) Petitioner's use of the Santa Monica Boulevard address when filing, on April 15, 1982, a request for an extension of time within which to file a return for 1981; and, (2) petitioner's use of the Santa

---

[11]We express no opinion with respect to the situation where respondent fails to exercise reasonable diligence in the processing of a return, and where, had reasonable diligence been exercised, such return would have been the taxpayer's "most recently filed return." Because such facts are not now before us, we leave that case for consideration at another time.

Monica Boulevard address when filing, on June 15, 1982, a tax return for 1981.

Respondent, on the other hand, contends that although such communications may have been notice of a change of address for petitioner in her status as a separately filing taxpayer, such communications did not constitute notice of an address change for petitioner in her status as a joint filer because, respondent contends, the communications did not include an express notification to respondent that the Abeles no longer cohabited. That is, respondent argues that although the use of a new address on petitioner's communications with respondent concerning her 1981 return might direct respondent to send all correspondence regarding such separate return to the Santa Monica Boulevard address, respondent asserts that it could not be assumed that petitioner wished all correspondence regarding prior joint tax returns to also be sent to the same address.

We are unpersuaded by respondent's argument. By advancing such a position, respondent is again contending that he had, with respect to petitioner, *two* last known addresses: one with respect to *returns* petitioner filed jointly with Mr. Abeles prior to 1981, and one with respect to returns petitioner filed separately from 1981 and thereafter. Such an assertion of multiple last known addresses is unfounded, as we have already discussed above.

In the case at hand, petitioner's most recent return was filed on June 15, 1982, approximately 5½ months prior to the date the 1975 and 1977 notice of deficiency was mailed. Such return reflected petitioner's tax address as being the Santa Monica Boulevard address. At the time such notice was sent, the agent responsible for mailing such notice had available the means to access, via an IRS computer transcript, the address reflected upon petitioner's separate 1981 tax return. Thus, for purposes of section 6212, petitioner's last known address was the Santa Monica Boulevard address.[12] That such address was "in care of" petitioner's

---

[12]The conclusion here reached would have been the same even if this Court had not chosen to adopt, as its own, the position that a taxpayer's last known address is that found on his most recently filed return without clear and concise notice to the contrary. Under the principles of *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), we would have followed the precedent established in the court to which an appeal would lie. Appeal in this case would lie in the Ninth Circuit, and that circuit has adopted the same standard we adopt in this case. See *United States v. Zolla,* 724 F.2d 808 (9th Cir. 1984); *Cool*

accountant does not affect this determination; if a taxpayer chooses to use an address "in care of" his tax advisor, that should not prevent such address from being the taxpayer's last known for respondent's notice of deficiency purposes.

In addition to having a new last known address for petitioner, the Santa Monica Boulevard address, respondent knew that Mr. Abeles' last known address was the La Cienega address at the time he sent the notice concerning 1975 and 1977. Thus, respondent had notice that each of the previous joint filers, petitioner and Mr. Abeles, had a separate last known address. Having a different last known address for each of the persons previously filing jointly, respondent should have issued a duplicate original of the joint notice of deficiency to each of such joint filers' last known addresses.

Considering respondent's computer capabilities at the time the notice concerning 1975 and 1977 was issued, it was unacceptable for respondent to rely solely upon only that information in his computer concerning only Mr. Abeles, the primary taxpayer of the joint returns under examination. A joint return necessarily entails two taxpayers. The spousal taxpayer should be entitled to expect that the same diligence as respondent exercises with respect to the primary taxpayer will be exercised with respect to the spousal taxpayer. Respondent did not exercise the diligence with respect to petitioner. Respondent's records concerning the Abeles' joint account for the 1975 and 1977 taxable years had been updated, at some point in time within the year immediately preceding the date the notice of deficiency for those years was mailed, so as to contain Mr. Abeles' most recent address, the La Cienega address. However, those same records were not updated to reflect petitioner's use of a new address or filing status on her most recently filed return, although that information was used to update the IRS's records concerning petitioner in her separate-filer status.

Moreover, considering respondent's computer capabilities at the time of trial, we fail to understand—especially in

Fuel, Inc. v. Connett, 685 F.2d 309 (1982); and Wallin v. Commissioner, 744 F.2d 674 (9th Cir. 1984), revg. a Memorandum Opinion of this Court.

light of *Wallin v. Commissioner,* 744 F.2d 674 (9th Cir. 1984), revg. a Memorandum Opinion of this Court, a case which we stress also arose in the Ninth Circuit—why respondent continued to look to only the joint tax account, as such was maintained under petitioner's ex-husband's TIN, when attempting to obtain information concerning petitioner. Such a myopic viewpoint is unreasonable, as exhibited by respondent's steadfast assertion that, at the time of trial, petitioner's filing status was still that of a joint filer, and that petitioner's last known address was still the same as Mr. Abeles'. Such assertions were made even though respondent acknowledged that his records contained a return filed by petitioner subsequent to 1977, in the status of married, filing separately, which bears an address different from that of Mr. Abeles. Such assertions are made by respondent solely because his records do not contain an express notification by petitioner that she no longer continues to "cohabit" with Mr. Abeles.

Because respondent failed to send a duplicate original of the joint notice of deficiency concerning the Abeles' 1975 and 1977 taxable years to petitioner's last known address, there has been no valid notice of deficiency issued to petitioner upon which our jurisdiction might be based; the notice which was sent to Mr. Abeles' last known address was invalid as against petitioner. Without a valid notice of deficiency as against petitioner concerning her 1975 and 1977 taxable years, we hold that this Court has no jurisdiction with respect to such years.

### Taxable Year 1976

With respect to whether this Court has jurisdiction over the subject matter of petitioner's 1976 taxable year, respondent asserts that the joint notice of deficiency sent to Mr. Abeles' last known address on October 15, 1980, concerning petitioner's 1976 taxable year, was valid against petitioner, and that the petition filed herein with respect to petitioner's 1976 taxable year was not timely. Accordingly, respondent asserts jurisdiction is lacking with respect to petitioner's 1976 taxable year based upon the untimeliness of the petition filed with respect thereto.

As an answer to respondent's motion to dismiss, rather than addressing the issues of the petition's validity or timeliness, petitioner contends that the period of limitation on assessment under section 6501 was not suspended under section 6503(a),[13] during the period prior to the entry of the decision in docketed case numbered 1372-81, and that, therefore, the statute of limitations on assessment for her 1976 taxable year has expired.

As previously discussed, the prerequisites to this Court's jurisdiction are the issuance of a valid notice of deficiency, and the timely filing of a petition. *Pyo v. Commissioner, supra; Mollet v. Commissioner, supra; Keeton v. Commissioner, supra.* Petitioner does not contend that the notice of deficiency concerning her 1976 taxable year was not valid as against her. Further, petitioner concedes that the petition herein, as such relates to her 1976 taxable year, was not timely filed. Having a valid notice of deficiency but lacking a timely filed petition, this Court is without jurisdiction with respect to petitioner's 1976 taxable year.

The assertions petitioner makes concerning the statute of limitations on assessment "is a defense at bar and is not a plea to the jurisdiction of this Court." *Robinson v. Commissioner,* 57 T.C. 735, 737 (1972); Rule 39. As such, a determination by this Court upon such assertions would be one on the merits of this case, and would be one beyond our jurisdiction. Accordingly, respondent's motion to dismiss for lack of jurisdiction, based upon the untimely filing of the petition as it concerns 1976, will be granted.

## Taxable Year 1978

The petition herein alleges that a deficiency has been determined with respect to petitioner's 1978 taxable year in the amount of $873.26. Respondent has submitted a motion

---

[13]Sec. 6503(a) provides in relevant part:

SEC. 6503(a). ISSUANCE OF STATUTORY NOTICE OF DEFICIENCY.—

(1) GENERAL RULE.—The running of the period of limitations provided in section 6501 * * * on the making of assessments or the collections by levy or a proceeding in court, in respect of any deficiency as defined in section 6211 (relating to income, estate, gift and certain excise taxes), shall (after the mailing of a notice under section 6212(a)) be suspended for the period during which the secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

to dismiss such year from our consideration on the ground that we lack jurisdiction over the subject matter as no notice of deficiency has been issued with respect to 1978.

Petitioner has not addressed the issue of our jurisdiction with respect to taxable year 1978 in either her own motion to dismiss for lack of jurisdiction concerning 1975, 1976, and 1977, her brief in support thereof, or her brief in opposition to respondent's motion. Further, the record in this case does not contain any evidence that a notice of deficiency was ever issued with respect to petitioner's 1978 taxable year.

Because petitioner has not addressed respondent's assertion that no notice of deficiency has been issued with respect to her 1978 taxable year, we must assume that petitioner has conceded that issue. See *Money v. Commissioner,* 89 T.C. 46, 48 (1987); *Atlee v. Commissioner,* 67 T.C. 395, 396 n. 2 (1976); *Hedrick v. Commissioner,* 63 T.C. 395, 396-397 (1974); *Goulding v. Commissioner,* T.C. Memo. 1988-212. Consequently, we hold that this Court lacks jurisdiction over the subject matter of petitioner's 1978 taxable year.

We thus conclude that: (1) Petitioner's motion to dismiss for lack of jurisdiction, based upon the invalidity of the notice of deficiency concerning petitioner's 1975 and 1977 taxable years, will be granted; (2) respondent's motion to dismiss for lack of jurisdiction, based upon the untimeliness of the petition herein as such related to petitioner's 1976 taxable year, will be granted; and, (3) respondent's motion to dismiss for lack of jurisdiction, based upon the lack of a notice of deficiency concerning petitioner's 1978 taxable year, will be granted.

To reflect the foregoing,

*An appropriate order will be entered.*

Reviewed by the Court.

NIMS, CHABOT, WHITAKER, KÖRNER, SHIELDS, COHEN, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, WELLS, WHALEN, and COLVIN, *JJ.,* agree with the majority opinion.

RUWE, *J.*, dissenting: Today the majority announces that it is overruling nearly 16 years of precedent in this Court. See *Yusko v. Commissioner*, 89 T.C. 806, 808 (1987); *Pyo v. Commissioner*, 83 T.C. 626, 634 (1984); *Weinroth v. Commissioner*, 74 T.C. 430, 436-437 (1980); *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. 367, 376-377 (1974), affd. without published opinion 538 F.2d 334 (9th Cir. 1976); *Lifter v. Commissioner*, 59 T.C. 818, 822 (1973); *Budlong v. Commissioner*, 58 T.C. 850, 852-853 (1972). The principles of these prior opinions still appear to be generally supported by a majority of the courts of appeals. See *King v. Commissioner*, 857 F.2d 676, 679 n. 5 (9th Cir. 1988) (noting that the Tax Court and a majority of the courts of appeals have ruled that a subsequent return is not wholly determinative of a taxpayer's last known address). The majority, while continuing to adhere to a rationale requiring respondent to "exercise reasonable diligence in ascertaining the taxpayer's correct address" (see *Alta Sierra Vista, Inc. v. Commissioner, supra* at 374), nevertheless finds that respondent was unreasonable on November 30, 1982 (the date the notice of deficiency was mailed) in determining petitioner's last known address in conformity with the very rules we have prescribed prior to today. Exacerbating this situation is the fact that both the old and new rules for determining a taxpayer's last known address are largely procedural in nature, making it of utmost importance that the controlling rules provide a "bright line" so that respondent has "clear guidance as to what information it must examine in determining a taxpayer's last known address." *King v. Commissioner, supra* at 680; *United States v. Zolla*, 724 F.2d 808, 811 (9th Cir. 1984).

I do not disagree with the trial judge's fact finding regarding the technological advances in respondent's computer capabilities nor do I advocate unswerving adherence to past precedent for its own sake. Although the majority's new rule will require respondent to increase significantly his use of computer resources, I do not find anything in the record indicating that these new requirements are unreasonable if they are *prospective* requirements. However, invalidation of the notice of deficiency in issue, which was mailed 6 years ago in accordance with procedures we upheld until

today, is inequitable and inconsistent with any rule whose foundation is based upon the required exercise of reasonable diligence.

Proper resolution of this case and implementation of the majority's new rule requires a consideration of competing objectives. On the one hand, the rules for determining a taxpayer's last known address are designed to provide "petitioner with prompt and fair notice of the deficiencies." *Alta Sierra Vista, Inc. v. Commissioner, supra* at 377. The best methods for achieving this objective will necessarily change with technological advancements. Competing with the objective of giving actual notice is the recognition that respondent should not be required to exhaust all possibilities in ascertaining a last known address. The very structure of section 6212(b)(1) recognizes that actual notice is not always reasonably possible and that actual receipt of the notice is not a prerequisite to validity. *King v. Commissioner, supra* at 679. Finally, given the numerous possible methods that might be used to determine a last known address, the rules for ascertaining a taxpayer's last known address should be clear and serve as a reliable guide to the respondent. *King v. Commissioner, supra* at 680. The application of new and different rules to notices of deficiency mailed in prior years, in accordance with our then-outstanding precedents, totally ignores these last two considerations and makes our opinions an unreliable source of guidance. Following the majority's approach, it is possible that 6 years from now we might invalidate a notice issued this year in conformity with the majority's new rule by finding that there existed even better methods for determining a last known address.

A solution is to apply the majority's new rules for determining a taxpayer's last known address prospectively only. The primary authority for limiting the retroactive application of judicial decisions is *Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971).[1] In *Chevron,* the plaintiff commenced an action for injuries he sustained while working on an offshore oil rig. The action was filed several years after the alleged injury. Subsequent to filing the suit in *Chevron,* the

---

[1] A very recent application of the *Chevron* case by the Court which has appellate jurisdiction over this case is contained in *Austin v. City of Bisbee, Arizona,* 855 F.2d 1429 (9th Cir. 1988).

Supreme Court held in *Rodrique v. Aetna Casualty & Surety Co.,* 395 U.S. 352 (1969), that the Federal law, upon which the claim in *Chevron* was based, adopted the law of the adjacent State instead of general admiralty principles. The Court in *Chevron* held that the law of the adjacent State included the State statute of limitations, which in *Chevron* ran 1 year after the date of injury. Application of the State statute of limitations would have totally barred plaintiff's claim. Noting that the plaintiff filed his action relying on pre-*Rodrique* precedent under which his suit would have been timely, the Court stated:

When the respondent was injured, for the next two years until he instituted his lawsuit, and for the ensuing year of pretrial proceedings, these Court of Appeals decisions represented the law governing his case. It cannot be assumed that he did or could foresee that this consistent interpretation of the Lands Act would be overturned. The most he could do was rely on the law as it then was. "We should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights." *Griffin v. Illinois,* 351 U.S. 12, 26 (Frankfurter, J., concurring in judgment). [*Chevron Oil Co. v. Huson,* 404 U.S. at 107.]

*Chevron* sets forth three separate factors to be considered when evaluating the extent to which a new rule will not be applied retroactively. "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron Oil Co. v. Huson, supra* at 106. There is no doubt that we are overruling "clear past precedent" in this Court. Presently, most courts have said that respondent is required to consult computer records for the address on the taxpayer's most recent return *only* when he knows, or should know, based on all the facts and circumstances, that the taxpayer has moved. See *Mulder v. Commissioner,* 855 F.2d 208, 212 (5th Cir. 1988), revg. a Memorandum Opinion of this Court; *Wallin v. Commissioner,* 744 F.2d 674, 677 (9th Cir. 1984), revg. a Memorandum Opinion of this Court; *McPartlin v. Commissioner,* 653 F.2d 1185, 1190 (7th Cir. 1981); *Crum v. Commissioner,* 635 F.2d 895, 899-900 (D.C. Cir. 1980). While the majority cites cases indicating that we might at some point consider new requirements for deter-

mining a taxpayer's last known address (majority opinion at pp. 1033-1034), none of our opinions clearly foreshadow the specific rules laid down in the majority opinion.

The majority holds that the address appearing on a taxpayer's most recently filed return is his or her last known address *and* that this address "is *available* to the agent issuing a notice of deficiency with respect to a previously filed return, if such address could be obtained by a computer generation of an IRS computer transcript using the taxpayer's TIN [social security number] in the case of a separately filed return, or *both* taxpayers' TINs in the case of a previously filed joint return." (Majority opinion at p. 1035.) The majority does not cite, and I am unaware of, any cases from other courts requiring respondent to ascertain joint filers' last known addresses by not only searching for subsequently filed returns using the primary taxpayer's social security number, but also by conducting an independent search for subsequent separate returns that might possibly have been filed by the spouse even though the spouse gave no other indication that he/she was maintaining a separate residence. Indeed, the majority's new rule also goes beyond any decision previously rendered by the one court that has consistently differed with the Tax Court in this area, the Ninth Circuit Court of Appeals.

In *Wallin v. Commissioner,* 744 F.2d 674 (9th Cir. 1984), the Ninth Circuit was faced with a taxpayer who had filed an individual return for 1977, after which she married, changed her name, moved to another address, and filed joint returns with her new husband for 1978 and 1979 in which her social security number and new last name appeared in the spousal box while her husband's appeared in the primary box. Following an unsuccessful effort by respondent to locate the taxpayer, respondent mailed a notice of deficiency for 1977 to the address listed on the 1977 return. The notice was returned as "unclaimed." The taxpayer argued that the subsequent filing of joint returns was sufficient, standing alone, to notify the IRS of her new address in light of the Ninth Circuit's rule that a new address on a subsequent return is the taxpayer's last known address. The Court, while finding that "The IRS has the ability to perform a computer search of both sets of social

security numbers in order to discover a subsequent return filed under a different name or in a different state" nevertheless found that the taxpayer's "subsequent return bore a name different from that contained in the 1977 tax return and offered almost no notice to the IRS." *Wallin v. Commissioner, supra* at 677. In *Wallin,* the Ninth Circuit clearly indicated that it was unnecessary to conduct a search for a taxpayer's last known address using his or her social security number to see if it may have been listed as a spousal social security number, unless the IRS was otherwise notified of a change of address. The majority's ruling requires respondent to always check his computer files for spousal social security numbers in situations where the filing sequence is the same as that presented in *Wallin,* even though respondent has no notice of a change of address. While the facts in *Wallin* are distinguishable from the instant case, that opinion also raises questions about how the Circuit Court would deal with the instant case.

Aside from overruling clear past precedent, the majority opinion also decides an issue that is before this Court for the first time. Respondent argued that a literal interpretation of section 6212(b)(2) supports his decision in this case to not conduct an independent search absent specific notice to him "by either spouse that separate *residences* have been established." Sec. 6212(b)(2); emphasis added. Petitioner's most recent return shows the address of her accountants and does not purport to indicate that it was her residential address. The majority opinion cites no precedent rejecting (or even discussing) respondent's literal application of the statute nor any opinion "clearly foreshadowing" the result reached by the majority. Indeed, I think even the majority would concede respondent is "literally" correct. Under these circumstances, the majority's ruling was not clearly foreseeable nor could respondent's approach to the "last known address" determination be branded unreasonable.

The second factor considered in *Chevron* requires "looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Chevron Oil Co. v. Huson, supra* at 107. The purpose of the rule announced by the majority is to enhance the likelihood of actual notice by requiring

respondent to use his present computer capabilities when determining the taxpayer's last known address. At the same time, one of the concepts behind the statutory provision is that actual notice is not required so long as respondent's method for determining a taxpayer's last known address is reasonable. Nothing can now be done to improve past determinations of last known addresses. The issue is whether respondent was reasonable. Retroactive application as a sanction is inappropriate where respondent adhered to procedures which we had previously found sufficient. The legislative purpose of prohibiting the assessment of a deficiency prior to giving notice of a deficiency could arguably be served by retroactive application, but then we would have to ignore the legislative intent, that it is not actual notice, but only the exercise of reasonable diligence by respondent that is required.

The third factor to be considered in a retroactivity determination is the weighing of the inequities that would result. *Chevron Oil Co. v. Huson, supra* at 107. The majority's opinion will invalidate an unknown number of notices of deficiency issued in conformity with our prior opinions and will result in the wholesale dismissal of an unknown number of cases on jurisdictional grounds without ever considering the underlying facts and law determinative of the actual tax liability. It is also likely that the statute of limitations will prevent respondent from reissuing notices in the vast majority of such cases.[2] Respondent conformed his conduct to the requirements set forth in our prior opinions, and it is inequitable to conclude that he should be barred from the opportunity of ever obtaining a correct determination of tax based upon the individual merits of these cases.[3] This result is particularly inequitable considering the procedural nature of the majority's new rule. It is true that taxpayers such as petitioner also suffer a disad-

---

[2] A notice of deficiency incorrectly addressed and not received by a taxpayer prior to the 90th day after its mailing does not toll the running of the statute of limitations. *Boren v. Riddell,* 241 F.2d 670, 671 (9th Cir. 1957); *Welch v. Schweitzer,* 106 F.2d 885 (9th Cir. 1939); *Reddock v. Commissioner,* 72 T.C. 21, 26 (1979); *Rodgers v. Commissioner,* 57 T.C. 711, 713 (1972).

[3] As previously noted, it is far from clear how the Ninth Circuit will rule if this case is appealed. In any event, the opinions definitively setting forth the Ninth Circuit rule were decided subsequent to issuance of the notice of deficiency in this case. *Wallin v. Commissioner,* 744 F.2d 674 (9th Cir. 1984), revg. a Memorandum Opinion of this Court; *United States v. Zolla,* 724 F.2d 808 (9th Cir. 1984).

vantage if the rule is not applied retroactively because nonretroactive application will result in loss of a prepayment forum. Taxpayers, however, may still obtain a resolution of their cases on the merits, in that they still have an opportunity for an administrative disposition with respondent and, if that proves unsuccessful, the merits can be adjudicated in a refund suit.

Another equitable factor to consider is the significant increase in the burdens being placed on respondent. The majority's broad based rule will require computer searches using social security numbers of all taxpayers in all situations. The majority and the Ninth Circuit in *Wallin v. Commissioner, supra,* recognized that it was respondent's long-standing practice normally to restrict his search for later filed returns to one looking for primary taxpayers' social security numbers. If the taxpayer appeared as the spousal taxpayer on a subsequent return, this type of search would not reveal it. This general practice has never previously been criticized in the absence of other factors putting respondent on notice that the taxpayer has moved. Under the new rule, it seems clear that whenever a notice of deficiency is to be mailed regarding a joint liability, the respondent will be required, in all cases, to search for subsequently filed returns using both the primary and spousal social security number. It will also be necessary for the search to cover the possibility that either of the prior spouses might have remarried and been listed as either primary or spousal taxpayers on their subsequent joint returns. Notices of deficiency regarding individual returns will also require similar searches for subsequently filed joint returns where the individual's name may have changed and/or the individual is listed as the spousal taxpayer, rather than the primary taxpayer. It is likely that all of the possible search variations will frequently be necessary since taxpayers can, but frequently do not, file early. For example, a computer search for a primary taxpayer made on April 1, that fails to show a return for the prior year, may mean that no return has yet been filed or processed, but may also mean that the taxpayer is listed as a spouse on a

recently filed joint return. Considering that over one hundred million individual income tax returns are filed each year (see Internal Revenue Service Annual Report 1987), the increased obligations imposed by the majority's rule, and the possibility that significant system changes are necessary, it is inequitable to invalidate notices of deficiency issued prior to today's ruling in conformity with our prior opinions.

A final equitable consideration that applies to all taxpayers is that retroactive application of the majority's new rule will result in disparate treatment of similarly situated taxpayers depending upon whether their case was disposed of before or after the announcement of our new standards.

Regarding the equities in this particular case, the facts do not support special consideration for petitioner. Petitioner apparently relied totally upon her ex-husband to handle her tax matters, even to the extent of being ignorant about whether returns were ever filed. When petitioner separated from her husband, she apparently made no provisions for ascertaining the status of her tax obligations for prior years and failed to notify respondent that she had changed residences. The fact that she filed a subsequent return using the filing status of married filing separately and giving her address as "c/o: Segal, Goldman & Macnow, Inc.," her accountants, gave no notice that petitioner was separated or had changed her residence, nor, in my opinion did it constitute "clear and concise notification from the taxpayer directing the Commissioner to use a different address" with respect to correspondence involving prior years. See *Alta Sierra Vista, Inc. v. Commissioner,* 62 T.C. 367, 376-377 (1974), affd. without published opinion 538 F.2d 334 (9th Cir. 1976); see *Wallin v. Commissioner, supra* at 676. It is only after the majority's establishment of a "bright line" test that petitioner's subsequent return in this case can be said to constitute sufficient notification of a change in her last known address for the years in issue.

For the reasons set forth above, I dissent from that portion of the majority's opinion which would apply its newly announced rules for determining a taxpayer's last

known address to notices of deficiency mailed prior to the date of the opinion in this case.[4]

PARKER, GERBER, and WILLIAMS, *JJ.*, agree with this dissent.

---

[4]There is no inherent impediment to the announcement of a new rule, while at the same time refusing to apply it to the parties in that case. See *Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358 (1932). See also *Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971).