NANCY J. JOHNSON BAYER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bayer v. Commissioner
Docket No. 11408-89
United States Tax Court
T.C. Memo 1991-282; 1991 Tax Ct. Memo LEXIS 325; 61 T.C.M. (CCH) 2980; T.C.M. (RIA) 91282; June 24, 1991, Filed *325 Petitioner filed a motion for administrative and litigation costs requesting reimbursement pursuant to Rule 33(b), Tax Court Rules of Practice and Procedure, or alternatively, section 7430, Internal Revenue Code. Held: Because of the Federal Government's sovereign immunity, the Internal Revenue Code is the basic authority allowing an award of administrative and litigation costs against the Federal Government for cases involving Federal taxes as defined in section 7430. Pursuant to section 7430, respondent's position regarding whether the notices of deficiency were mailed to petitioner's last known address was not substantially justified. Held further: Petitioner is the prevailing party and is entitled to reimbursement for her reasonable administrative and litigation costs. Thomas J. O'Rourke, for the petitioner. Diane D. Helfgott, for the respondent. DRENNEN, Judge. [1]
DRENNEN
MEMORANDUM OPINION This matter is before the Court on petitioner's motion for litigation costs pursuant to Rule 33(b), or alternatively, section 7430 *326 and Rule 231, which we treat as a motion for administrative and litigation costs. All section references are to the Internal Revenue Code, as amended and in effect during the relevant time periods. Unless otherwise stated, all Rule references are to the Tax Court Rules of Practice and Procedure. By statutory notices of deficiency, respondent determined the following deficiencies in the Federal income taxes of petitioner and Mr. Johnson (petitioner's former husband). Additions to Tax--Sections
Taxable Year
Deficiency
6651(a)(1)
6653(a)
1979
$ 3,302.00
$  40.80
$ 272.85
1980
$ 3,291.00
$ 331.00
$ 403.00 Additions to Tax--Sections
Taxable Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1981
$ 3,810.00
$ 102.00
$ 581.85
*
The underlying issue was whether the notices of deficiency were mailed to petitioner's last known address within the meaning of section 6212. Respondent eventually conceded that they were not. The issues for decision herein *327 are (1) whether petitioner is entitled to administrative and litigation costs pursuant to either section 7430 or Rule 33(b), and, if so, (2) the amount of administrative and litigation costs to be awarded. A summary of petitioner's total claim for attorneys' fees and administrative costs is as follows. ITEM
AMOUNT
Attorneys' Hourly Fees
$ 14,062.00
Miscellaneous Attorneys' Expenses
$    129.69
Automated Equipment Charges
$    669.50
Tax Court Filing Fee
$     60.00
IRS Fees for Freedom of
Information Act (FOIA) material
$    102.65
TOTAL
$ 15,023.84
No claim is being made for any amounts incurred prior to August 17, 1989, with the exception of the $ 60 filing fee paid to this Court and the $ 102.65 fee paid to respondent for the material received pursuant to petitioner's FOIA request. The petition herein was filed with this Court on May 30, 1989. At that time, petitioner was a resident of Washington, D.C. Petitioner and Mr. Johnson separated in November 1979. During the summer of 1980, petitioner moved to Wichita, Kansas, and lived with her parents. Petitioner used this Wichita address as her permanent address at all relevant times herein, *328 although petitioner did not notify respondent in writing of her change of address. Petitioner and Mr. Johnson agreed to, and did, file joint Federal income tax returns for 1979 and 1980, using the filing status "married filing jointly." Mr. Johnson also filed a joint Federal income tax return on behalf of petitioner and himself for the year 1981. Petitioner did not sign this return. [2] Petitioner and Mr. Johnson were divorced in January, 1983. *329 The following is a paraphrased summary of the relevant events leading up to and including petitioner's motion for litigation costs under consideration herein. Date
Activity
5-23-80
1979 joint return was filed using Wayne, PA address. 9-9-81
1980 joint return was filed using Donachie Rd.,
Baltimore, MD address (hereinafter Donachie.)
6-23-82
1981 joint return was filed by husband using Donachie
address.
10-27-82
Husband wrote to R requesting more time for audit,
citing his difficulty getting information from his wife
since she had moved. Husband also informed R
of husband's change of address to 502 Evesham,
Baltimore, MD (hereinafter 502 Evesham or Evesham.)
1-26-83
Husband again requested more time. He wrote on bottom
of Form 872-A, Consent to extend the time to assess
tax, that he was in Kansas where he was trying to get
the information from his "ex-wife." This form listed
both spouses' names and alleged signatures.
2-28-83
Notice of deficiency re: 1979 mailed to 502 Evesham.
8-3-83
Notice of deficiency re: 1980-81 erroneously mailed to
an unknown Annapolis, MD address.
9-19-83
Notice of deficiency re: 1980-81 mailed to 502 Evesham.
8-13-84
Notice of deficiency re: 1981 again mailed to erroneous
Annapolis address.
5 YEAR HIATUS
5-11-89
R issued notice of levy on P's bank account in Kansas
and seized $ 3,465.39.
5-18-89
R issued notice of levy on P's employer in Kansas.
5-24-89
P filed Freedom of Information Act (hereinafter FOIA)
request for relevant documents from R.
5-30-89
P filed petition with Tax Court.
7-89
FOIA information received by P.
7-17-89
R filed motion to extend time in which to answer
petition since R had not received his own
administrative files re: years in issue.
8-16-89
Counsel for R and P met. R and P reviewed all FOIA
information received by P. P asked R to concede.
8-17-89
P sent letter to R confirming P's position and again
asked R to concede tax deficiencies, repay amounts
seized from levies, and pay P's litigation costs.
9-7-89
R received his administrative files re: years at issue.
9-12-89
R filed Answer to P's petition denying all material
allegations in petition.
9-12-89
R sent letter to P requesting all addresses at which
P lived from 1980-1983.
9-14-89
P sent letter to R with requested information. 6 MONTH HIATUS
3-13-90
P sent letter to R again requesting that R concede.
4-2-90
P filed motion to dismiss.
4-26-90
R filed response to P's motion and conceded that a
notice of deficiency had not been mailed to P's last
known address.
5-1-90
Tax Court entered Order of Dismissal for Lack of
Jurisdiction
5-31-90
P filed motion for award of administrative and
litigation costs.
6-1-90
Tax Court issued Order setting aside previous Order
of Dismissal and reinstating case for purposes of
the motion for award of administrative and litigation
costs.
7-27-90
R filed his objection to P's motion.
8-30-90
P filed a reply to R's objection.
*330 After receiving an extension of time for filing his Answer, respondent received his administrative files. Respondent subsequently filed an Answer to the petition which denied all material allegations, including the restatement of the amounts in controversy. Petitioner's attorney advised respondent at their first meeting held on August 16, 1989, that it was important to petitioner that this case be resolved quickly in order to minimize costs to petitioner. Petitioner's concern for a speedy resolution was repeated at subsequent meetings. Because respondent had been successful in seizing petitioner's savings and levying on her wages, petitioner did not have the funds to pursue a protracted legal proceeding. Additionally, on March 13, 1990, petitioner's attorney advised respondent that petitioner was eligible for a promotion but could not be considered for that promotion until her tax liability at issue was resolved. An analysis of the detailed invoices from petitioner's attorney, attached to his affidavit filed with the motion for administrative and litigation costs, yields the following information regarding amounts billed to petitioner for litigation and administrative costs *331 incurred in this proceeding. For convenience, we have bifurcated the fees and administrative costs into several different time periods, as indicated below. Amounts claimed by petitioner through 1-31-90: [3]
Attorneys' Fees:
O'Rourke
3.1 hours x $ 175
$  542.50
Townsend
.5 hour x $  90
$   45.00
Townsend
.7 hour x $  95
$   66.50
Subtotal:
$ 654.00
Costs claimed:
Filing fee
$  60.00
FOIA Documents fee
$ 102.65
Subtotal:
$ 162.65
TOTAL:
$ 816.65
Amounts incurred from 2-1-90 through 4-24-90 relating to petitioner's Motion to Dismiss filed on 4-2-90: Attorneys' Fees:
O'Rourke
February .5 hr.
March
17.2 hrs.
April 2.8 hrs.
20.5 hours x $ 190
$ 3,895.00
Mansour
February
17.6 hrs.
March
14.7 hrs.
April 3.6 hrs.
35.9 hours x $  90
$ 3,231.00
Mansour 5.4 hours x $  0
0.00
Subtotal:
$ 7,126.00
Costs claimed:
Word processing and computer research
$   650.00
Miscellaneous Attorneys' Expenses
$   104.95
Subtotal:
$   754.95
TOTAL:
$ 7,880.95
*332 Amounts incurred from 5-4-90 through 5-25-90 relating to petitioner's motion for award of administrative and litigation costs: Attorneys' Fees:
O'Rourke
23.3 hours x $ 190
$ 4,427.00 4.1 hours x $   0
$     0.00
Townsend .5 hour x $ 105
$    52.50
Mansour
32.5 hours x $  90
$ 2,925.00
20.0 hours x $   0
$     0.00
Subtotal:
$ 7,404.50
Costs:
Word processing and computer research
$   422.50
Miscellaneous Attorneys' Expenses
$    80.75
Subtotal:
$   503.25
TOTAL:
$  7,907.75
TOTAL FEES AND COSTS INCLUDED IN AFFIDAVITS:
$ 16,605.35
We note that this total is somewhat higher than the total claimed by petitioner. This is partly due to mathematical errors by petitioner's counsel in summarizing this information, and partly due to an initial low estimate of the time spent preparing the motion for administrative and litigation costs. However, for purposes herein petitioner claims reimbursement for only a portion of the time billed for preparing the motion for administrative and litigation costs. She claims reimbursement for 20 hours for Mr. O'Rourke's time and 20 hours for Mr. Mansour's time spent preparing the motion. Petitioner's *333 motion for administrative and litigation costs and accompanying legal memorandum include arguments supporting recovery pursuant to either Rule 33(b) or section 7430. Respondent bases his objections to petitioner's motion for administrative and litigation costs solely on arguments pertaining to section 7430. Respondent contends his position was substantially justified at all times during this proceeding. Petitioner's response to respondent's objection contends that section 7430 is applicable only if we find Rule 33(b) not to apply to these facts and circumstances. We will first analyze petitioner's contentions as stated in her motion for administrative and litigation costs pursuant to Rule 33(b). Rule 33(b) provides as follows: Rule 33. Signing of Pleadings. * * * (b) Effect of Signature: The signature of counsel or a party constitutes a certificate by the signer that the signer has read the pleading, that, to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed *334 for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading is signed in violation of this Rule, the Court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable counsel's fees.
Petitioner contends respondent's Answer is not well grounded in fact nor warranted by existing law. Petitioner further contends respondent's Answer denied all material allegations for purposes of delay and to needlessly increase the cost of litigation. Petitioner alleges that an award pursuant to Rule 33(b) is not subject to the $ 75 per hour limit for attorneys' fees imposed by Congress in section 7430. Petitioner cites two factors indicating Rule 33(b) is not subject to the $ 75 per hour limit. One, this Court has recognized that reasonable fees charged by tax attorneys in metropolitan areas frequently exceed the $ 75 per hour limit imposed by Congress, Stieha v. Commissioner, 89 T.C. 784, 792 (1987); *335 and two, respondent does not dispute that petitioner's counsel's fees are in accord with those normally charged by attorneys with similar experience in the Washington, D.C., metropolitan area. We first decide whether petitioner may recover all of her litigation costs pursuant to Rule 33(b). The stumbling block is the longstanding principle of sovereign immunity. In general, the United States government is immune from any suits brought against it by private parties. Sovereign immunity must be specifically waived by Congress. As the Supreme Court has long held, "The general rule is that, in the absence of a statute directly authorizing it, courts will not give judgment against the United States for costs or expenses." United States v. Chemical Foundation, Inc., 272 U.S. 1, 20, 71 L. Ed. 131, 47 S. Ct. 1 (1926). As we discussed in McQuiston v. Commissioner, 78 T.C. 807 (1982), affd. without opinion 711 F.2d 1064 (9th Cir. 1983), there was no authority for this Court to award costs or attorneys' fees against the Federal Government prior to 1983. This was subsequently changed by Congress when it enacted section 7430 which is applicable to civil proceedings *336 commenced after February 28, 1983. Section 7430 constitutes a specific waiver by Congress of the sovereign's immunity against suit by a private party for litigation costs. The legislative history confirms that when enacted, section 7430 was intended to be the only exception to the Government's sovereign immunity against suits for litigation costs in Federal tax cases. The House of Representatives Ways and Means Committee Report, the Senate Finance Committee Report and the House-Senate Conference Committee Report all contain the following statement: "Section 7430 is the exclusive provision for awards of litigation costs in any action or proceeding to which it applies." H. Rept. 99-426, 1986-3 C.B. (Vol. 2) 839; S. Rept. 99-313, 1986-3 C.B. (Vol. 3) 198; H. Rept. 99-841 (Conf.), 1986-3 C.B. (Vol. 4) 800. [4]
*337 As the Supreme Court held: Except to the extent it has waived its immunity, the Government is immune from claims for attorney's fees, Alyeska [Pipeline Co. v. Wilderness Society, 421 U.S. 240, 44 L. Ed. 2d 141, 95 S. Ct. 1612,] 267-268 and n. 42. Waivers of immunity must be "construed strictly in favor of the sovereign," McMahon v. United States, 342 U.S. 25, 27, 96 L. Ed. 26, 72 S. Ct. 17 (1951), and not "enlarge[d] . . . beyond what the language requires." Eastern Transportation Co. v. United States, 272 U.S. 675, 686, 71 L. Ed. 472, 47 S. Ct. 289 (1927). In determining what sorts of fee awards are "appropriate," care must be taken not to "enlarge" * * * [the] waiver of immunity beyond what a fair reading of the language of the section requires.
Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 77 L. Ed. 2d 938, 103 S. Ct. 3274 (1983). Rule 33(b) was amended by this Court in 1986 to provide sanctions, including an award of reasonable expenses and attorneys' fees, in certain circumstances. As indicated in the note following the amended Rule 33(b): The amendment to par. (b) of Rule 33 is derived from the 1983 amendment to Rule 11 of the Federal Rules of Civil Procedure. It is designed to emphasize the responsibilities *338 of counsel and deter dilatory and abusive tactics by imposing effective sanctions therefor. The amendment imposes upon counsel the duty to make reasonable inquiry as to both the facts and the law prior to the filing of any pleading. The standard is one of reasonableness under the circumstances. What constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the underlying facts; whether the pleading was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar. Although the Rule as amended also applies to unrepresented parties, the Court has discretion to take into account the special circumstances that may arise in pro se situations.
Amendments to Rules of Practice and Procedure of the United States Tax Court, 85 T.C. 1121, 1126 (effective July 1, 1986). The Fourth Circuit has considered a claim for attorney's fees sought by a taxpayer against the Federal Government pursuant to Rule 11 of the Federal Rules of Civil Procedure (hereinafter Rule 11), regarding tax refund litigation *339 brought in a Federal District Court. As noted in the above quotation, Rule 33(b) is derived from Rule 11, indeed the language of Rule 33(b) is taken directly from Rule 11. The Fourth Circuit held: Section 7430(a) by its terms governs the availability of costs and fees in "any civil proceeding . . . brought by or against the United States . . . [for the] collection of any tax," * * *. This section prescribes in detail how and under what circumstances fees may be allowed in litigation over federal taxes. This precision would be pointless if fees could also be awarded in such cases under Rule 11 standards. For this reason, section 7430 must be considered the only waiver of sovereign immunity in this context, and the exclusive authority for an award of attorney's fees in the class of cases described by section 7430. Rule 11 does not afford [the taxpayer] a basis for recovery.
United States v. McPherson, Jr., 840 F.2d 244, 246 (4th Cir. 1988). Because this case is appealable to the District of Columbia Circuit, we are not bound to follow the Fourth Circuit. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). *340 However, we note that the District of Columbia Circuit, which we are bound to follow, has awarded fees against the Federal Government in very strict compliance with the appropriate Federal statute. Hirschey v. F.E.R.C., 250 U.S. App. D.C. 1, 777 F.2d 1, 5 (D.C. Cir. 1985). We also conclude that statutory law provides the authority herein for the Federal Government's waiver of sovereign immunity for purposes of an award of administrative and litigation costs. Alternatively, petitioner argues she is entitled to an award of costs pursuant to section 7430 and Rule 231. Section 7430, as amended by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3743-3747 (applicable to proceedings commenced after November 10, 1988), provides that the prevailing party may be awarded a judgment for reasonable administrative costs incurred in connection with administrative proceedings within the Internal Revenue Service, and reasonable litigation costs incurred in connection with a court proceeding. Any party in any proceeding is considered the prevailing party only if it is established that (1) the position of the United States in the proceeding was not substantially *341 justified; (2) the party substantially prevailed with respect to the amount in controversy or with respect to the most significant issue(s) presented; and (3) the party in question has a net worth not in excess of 2 million dollars at the time the proceeding was commenced. Sec. 7430(c)(4)(A). Additionally, a judgment for reasonable litigation costs will not be awarded unless we determine that the prevailing party had exhausted the administrative remedies available within the Internal Revenue Service prior to commencing an action in this Court. Sec. 7430(b)(1). Respondent does not contend that petitioner unreasonably protracted the Court proceeding within the meaning of section 7430(b)(4). Respondent concedes all issues except that the position of the United States was not substantially justified. [5] Additionally, in the event we find that petitioner is the prevailing party, respondent contends that the amount of costs claimed by petitioner is not reasonable. *342 In order to determine whether or not the position of the United States was not substantially justified, we must determine when the position of the United States was first established. Pursuant to section 7430(c)(7), the position of the United States is the position taken by respondent in the court proceeding and in the administrative proceeding as of the earlier of (1) the date petitioner receives the notice of the decision of the Internal Revenue Service Office of Appeals, or (2) the date of the notice of deficiency. The applicable dates herein are February 28, 1983, and August 3, 1983, the dates the notices of deficiency for 1979 through 1981 were initially issued by respondent. The "substantially justified" standard applied to respondent is a "reasonableness standard," i.e., whether respondent's actions were substantially justified during the relevant time period in light of legal precedents as applied to the factual development of the case. Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). As we noted in Sher, we will continue to look to the legislative history for section 7430 as it was enacted in 1981 *343 for guidelines. The relevant legislative history is as follows: The committee intends that the determination by the court on this issue is to be made on the basis of the facts and legal precedents relating to the case as revealed in the record. Other factors the committee believes might be taken into account in making this determination include, (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the Court finds relevant. * * *
H. Rept. 97-404, at 12 (1981). A taxpayer seeking litigation costs bears the burden of proving entitlement to them. To meet this burden, the taxpayer must show that legal precedent does not substantially support the government's position given the facts available to respondent. Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685 (1990); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). *344 The underlying issue in petitioner's case is whether respondent mailed any of the notices of deficiency to petitioner's last known address. Whether or not the notices of deficiency were properly mailed is a factual determination upon which the taxpayer has the burden of proof. Rule 142(a). Whenever there is a factual determination, respondent is not obliged to concede the case until he receives the necessary documentation to prove the taxpayer's contention. See Egan v. Commissioner, 91 T.C. 705, 713 (1988); Brice v. Commissioner, T.C. Memo 1990-355. At the very latest, respondent received the necessary documentation on September 7, 1989, when he received the relevant administrative files. Respondent had previously reviewed this same information at the August 16, 1989, meeting with petitioner's counsel. Respondent contends he was not certain after reviewing his administrative files that he had clear and concise notice that petitioner and Mr. Johnson had established separate residences. Therefore, he contends, it was not clear that he was required to send duplicate notices of deficiency pursuant to section 6212(b). Accordingly, respondent *345 contends he was substantially justified in his position. Section 6212(b)(2) provides that if respondent has been notified by either spouse that separate residences have been established, then duplicate originals of the joint notice of deficiency shall be sent to each spouse at his last known address. We interpreted this statutory provision in Abeles v. Commissioner, supra at 1030-1031, and held: compliance with * * * [section 6212(b)(2)] requires respondent to send duplicate originals of the joint notice of deficiency to each spouse's last known address whenever respondent has been notified, prior to the time that the notice of deficiency is to be issued, that the joint filers maintain separate last known addresses. Further, this rule shall apply so long as respondent is given notice that the two spouses do not share the same last known address, even if respondent is given notice of only one of such spouses' last known addresses. [Citations omitted.]
After reviewing the record we disagree with respondent's contentions. Respondent's administrative files contain ample information confirming that petitioner and Mr. Johnson had established separate *346 residences. Therefore, pursuant to section 6212(b), respondent was required to send duplicate originals of the notices of deficiency to petitioner and Mr. Johnson at their separate last known addresses. A taxpayer's last known address is the address noted on that taxpayer's last filed Federal income tax return absent clear and concise notification to the contrary. Abeles v. Commissioner, 91 T.C. 1019 (1988). Petitioner did not give respondent clear and concise notice of any change in her address. Petitioner's address on her last filed return was the Donachie address, to which no notice of deficiency was sent. Respondent had received all relevant information as outlined above by September 7, 1989. Respondent then requested all addresses at which petitioner lived during the relevant time period, which he received on September 14, 1989. Respondent then did nothing for six months. Petitioner wrote another letter asking respondent to concede based upon the facts contained in the administrative files. Respondent again did nothing and petitioner's attorneys proceeded by filing the motion to dismiss, incurring $ 7,881 in attorneys' fees. All factual information *347 contained in the motion to dismiss was also contained in respondent's administrative files. Respondent conceded the case shortly after the motion to dismiss was filed. We find that respondent's position during the time period prior to his concession was not substantially justified. Respondent did nothing for over six months when there was clear evidence in his administrative files that he had not issued a valid notice of deficiency to petitioner. We find this inactivity to be unreasonable. It appears from the record that respondent was using the costs and expenses of litigation to extract concessions from the taxpayer that were not justified under the circumstances of the case. Therefore, we hold that petitioner is the prevailing party and is entitled to an award of administrative and litigation costs pursuant to section 7430. The next issue for our decision is whether the amount of petitioner's requested litigation costs is reasonable, and, if not, the amount of litigation costs and administrative fees to be awarded. Therefore, we must decide whether the miscellaneous costs, the number of hours billed, and the rate at which those hours were billed are reasonable as claimed *348 by petitioner. Section 7430(c)(1) defines reasonable litigation costs in part as reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding. Reasonable administrative costs are likewise defined. Sec. 7430(c)(2)(B). In cases brought pursuant to section 7430 the taxpayer has the burden of proof. [6] In cases involving the factual determination of a taxpayer's last known address, it is often difficult for a taxpayer to prove why respondent sent the notice of deficiency to the wrong address, and subsequently why respondent pursued the case. On this record, we believe this warrants expenditure of additional time by counsel to adequately prepare and present the taxpayer's case. Petitioner's counsel billed 56.4 hours regarding work done preparing the motion to dismiss. We do not find this to be unreasonable. Petitioner's counsel billed 57.5 hours regarding work done preparing the motion for litigation costs; however, petitioner is only claiming reimbursement for 40 hours. We find 40 hours to be reasonable considering the detailed motion and affidavits submitted by petitioner. Amounts billed prior to February 1, 1990, which are amounts *349 incurred prior to preparation of the motion to dismiss, will not be reimbursed because the taxpayer must bear the expense of establishing the factual basis for the taxpayer's position against respondent. See Egan v. Commissioner, 91 T.C. 705 (1988). Respondent argues that previously we have limited the number of hours for an award of litigation costs in a case involving the factual determination of a taxpayer's last known address to 35 hours. Hubbard v. Commissioner, 89 T.C. 792 (1987). Respondent's argument is misleading. In Hubbard, counsel for the taxpayer claimed reimbursement for 35 hours and we awarded the full amount claimed. This does not mean that we limited the compensable hours to 35; that was *350 all that was claimed. Section 7430(c)(1)(B)(iii) limits the hourly rate for attorneys' fees to $ 75, with allowances for increases in the cost of living or other special factors. We have held that this rate may be adjusted for increases in the cost of living. Cassuto v. Commissioner, 93 T.C. 256 (1989), and section 7430(c)(1)(B)(iii) specifically authorize this. Respondent argues that the cost of living adjustments to the $ 75 per hour rate limitation should be computed from January 1, 1986, the effective date of amended section 7430(c)(1)(B)(iii) which first imposed the hourly restriction. Petitioner argues the cost of living adjustments should be computed from October 1, 1981, the date of the original enactment of the Equal Access to Justice Act (hereinafter EAJA). As we discussed in Cassuto v. Commissioner, supra at 272-273, Congress amended section 7430(c)(1)(B) in order to conform section 7430 with the EAJA provision for attorneys' fees, e.g., 28 U.S.C. section 2412(d)(2)(A). Therefore, as we concluded in Cassuto v. Commissioner, supra, the cost of living increases date from 1981. The District of Columbia *351 Circuit, to which this case is appealable, also has allowed the cost of living adjustment dating from 1981. Hirschey v. F.E.R.C., 250 U.S. App. D.C. 1, 777 F.2d 1, 5 (D.C. Cir. 1985). As we discussed in Cassuto v. Commissioner, supra at 273, the Consumer Price Index (hereinafter CPI) for all urban consumers (hereinafter CPI-U) was 279.3 as of October 1, 1981, using 1967 as the standard reference base period. The hours billed by petitioner's attorneys for which petitioner is entitled to be reimbursed were all rendered between February and May of 1990. As detailed in the Appendix, the hourly limit during these months ranges from $ 102.90 to $ 103.88. Because Mr. Mansour's hourly rate of $ 90 is within this limitation, his time will be reimbursed at the requested rate. Mr. O'Rourke's time will be reimbursed as set forth in the Appendix. Petitioner, in her legal memorandum in support of the motion for litigation costs, also argues that other special factors are present in this case to warrant an award of the full amount claimed, i.e., the $ 190 per hour rate charged by Mr. O'Rourke. Petitioner contends respondent's conduct was egregious and warrants an award *352 of all fees requested. We conclude that although many of respondent's actions appear to have been taken for purposes of delay to discourage petitioner from litigating this case, those very factors were cited in the legislative history when Congress enacted section 7430 as quoted above. We therefore presume that the subsequent limitations placed upon claims for reimbursement were seen by Congress as adequate compensation in situations such as petitioner's. Therefore, we hold that the hourly rate of compensation for purposes herein may not exceed the basic cap of $ 75 per hour plus the appropriate cost of living increases as computed in the Appendix. The miscellaneous expenses claimed by petitioner are allowed in part as follows. As noted in Hirschey v. F.E.R.C., supra at 6, overhead and secretarial fees are traditionally covered by attorneys' fees and are not charged separately. The affidavits submitted by petitioner's counsel also include a single amount each month claimed for "automated equipment time." This is explained as amounts expended for word processing and computer research. We decline to award any costs for amounts expended for word processing, *353 as this is a part of general secretarial fees. However, the portion of the $ 1,072.50 claimed for automated equipment time that is specifically for computer research is an allowable expense under section 7430. Hirschey v. F.E.R.C., supra; Keyava Construction Co. v. United States, 15 Cl. Ct. 135 (1988). Section 7430(c) defines reasonable administrative and litigation costs essentially as those administrative fees imposed by respondent or by this Court, plus amounts expended for expert witnesses and expert or third party reports necessary for litigation in addition to reasonable hourly fees paid for the services of attorneys. Under Hirschey v. F.E.R.C., supra, law office overhead does not fall within any of these categories and so is not allowed. The miscellaneous expenses billed by the attorneys are not within any categories specified in section 7430 and are not allowed. Hirschey v. F.E.R.C., supra at 6. However, amounts expended for computer research necessary for developing the case for litigation are within the parameters of this definition. See Hirschey v. F.E.R.C., supra; *354 Keyava Construction Co. v. United States, supra.The filing fee and FOIA documents fee, totalling $ 162.65, are also within this definition. In conclusion, pursuant to section 7430, we award petitioner attorneys' fees in the amount of $ 9,229.27 as set forth in the appendix. In addition, we award petitioner costs in the amount of $ 162.65 plus the portion of the $ 1,072.50 that is specifically for computer research. An appropriate order will be issued. APPENDIX All Consumer Price Index (CPI) information herein is taken from the CPI Detailed Report, United States Department of Labor, Bureau of Labor Statistics, which is published monthly. All information is from either the December 1981 edition or from the May 1990 edition. All information is from Tables entitled Consumer Price Index for All Urban Consumers: U.S. city average (CPI-U). The CPI-U measures the average change in prices of goods and services purchased by all urban consumers. Beginning with the release of data for January 1988, the standard reference base period for the Consumer Price Index is 1982-84. The figures we used in Cassuto v. Commissioner, supra, utilized *355 the former 1967 reference date. Both figures are set forth below. CPI-U
1967 = 100
1982-84 = 100
September 30, 1981
279.3
93.3 [7]
December 1981
281.5
94.0
February 1990
383.3
128.0
March 1990
385.5
128.7
April 1990
386.2
128.9
May 1990
386.9
129.2
For purposes of figuring the cost of living percentage increase on the $ 75 hourly limit for attorneys' fees, we will use the standard reference base period of 1982-84 because it is more current. CPI increase
Limit on
Hourly
since 10/81
Hourly Rate
Hours
Rate
Fees February 1990
37.2%
$ 102.90
O'Rourke
.5
$ 102.90
$    51.45
Mansour
17.6
$  90.00
$ 1,584.00
March 1990
37.9%
$ 103.43
O'Rourke
17.2
$ 103.43
$ 1,779.00
Mansour
14.7
$  90.00
$ 1,323.00
April 1990
38.2%
$ 103.65
O'Rourke
2.8
$ 103.65
$   290.22
Mansour
3.6
$  90.00
$   324.00
May 1990
38.5%
$ 103.88
O'Rourke
20.0
$ 103.88
$ 2,077.60
Mansour
20.0
$  90.00
$ 1,800.00
TOTAL ATTORNEYS' FEES AWARDED
$ 9,229.27
*356 Footnotes
1. By order of the Chief Judge, petitioner's motion for award of litigation costs was assigned to Judge Drennen for disposition.↩
*. To be determined.↩
2. Although respondent is not held accountable for addresses reflected on Federal income tax returns filed subsequent to the date the notices of deficiency were issued, Abeles v. Commissioner, 91 T.C. 1019, 1035↩ (1988), we note that petitioner filed a Federal income tax return for the year 1981 using the filing status "married filing separate" on August 14, 1984. This return showed a refund due petitioner, and reflected her address in Wichita, Kansas. There is no evidence contained in the fully-stipulated record regarding returns filed by petitioner for taxable years subsequent to 1981.
3. As noted above, petitioner does not claim reimbursement for attorneys' fees incurred prior to 8-17-89.↩
4. We note that section 6673 (applicable to positions taken after December 31, 1989, in proceedings which are pending on, or commenced after such date) also provides a waiver of sovereign immunity for an award of costs against the United States in Federal tax cases in certain situations not applicable herein. Section 6673 allows this Court to require, in part, that the United States pay excess costs, expenses, and attorneys' fees if an attorney appearing on behalf of the Commissioner has multiplied the proceedings in any case unreasonably and vexatiously.↩
5. See Commissioner, I.N.S. v. Jean, 496 U.S. 154, 110 S. Ct. 2316, 110 L. Ed. 2d 134↩ (1990) wherein the Supreme Court recognized the validity of awards for "fees for fees" and held that an award of fees under the Equal Access to Justice Act does not require a second finding that the government's position in fee litigation itself was not substantially justified.
6. In civil cases brought pursuant to the Equal Access to Justice Act regarding claims for litigation costs, the government bears the burden of proof. Equal Access to Justice Act, Pub. L. 96-481, 94 Stat. 2325. See 5 U.S.C. sec. 504 (1988); 28 U.S.C. sec. 2412 (1988)↩.
7. This figure was mathematically determined from the December 1981 figures.↩