PACIFICORP, a Maine corporation, dba Pacific Power & Light Company, Petitioner,

v.

**BONNEVILLE POWER ADMINISTRATION,** Respondent.

No. 87–7266.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 1988.

Decided Sept. 2, 1988.

Amended Oct. 4, 1988.

Thomas H. Nelson, Stoel, Rives, Boley, Jones & Grey, Portland, Or., for petitioner.

James O. Luce, Asst. Gen. Counsel, Bonneville Power Admin., Portland, Or., Robert B. Ross, Asst. U.S. Atty., Portland, Or., for respondent.

Before GOODWIN, Chief Judge, ALARCON, Circuit Judge, and TASHIMA,* District Judge.

GOODWIN, Chief Judge:

Pacificorp is an investor-owned electric utility company serving retail customers in Alturas, California, a city having a population of about 3000. Pacificorp appeals the decision of the Bonneville Power Administration (BPA) to serve Alturas with firm power through a creative use of the city's power of eminent domain and the preference afforded the Surprise Valley Electrification Corporation (SVEC) as a rural electrification beneficiary. *See* Pacific Northwest Electric Power Planning and Conservation Act (Planning Act), 16 U.S.C. § 839 et seq. (1982).

SVEC is an electrical cooperative organized under the Rural Electrification Administration, and, as such, it receives BPA power at the priority firm rate. As a full requirements customer of BPA, SVEC purchases all of its energy requirements from BPA at a very favorable price. SVEC now serves loads in Oregon, Nevada, and California. SVEC maintains offices in Alturas but does not presently serve customers in that city. Its customers are mostly isolated ranches that could not profitably be served by investor-owned utilities.[1]

For a number of years, SVEC has served retail customers located south of the northern boundary of Township 35 North, which is approximately 75 statute miles south of the Oregon–California border. These customers include residential consumers, the BLM Ravendale Ranger station, pumps, ranches, and other loads. In addition, SVEC serves other customers located more than 75 statute miles south of the Oregon–California border along separate branch lines. However, no BPA representative knew until after commencement of this litigation that SVEC served customers located more than 75 statute miles south of the Oregon–California border in Lassen County.[2]

■ This case is ripe for adjudication. Alturas' effort to become part of SVEC's service area is motivated solely by the townspeople's desire to terminate Pacificorp service and replace it with preferentially priced BPA power. If Alturas cannot receive BPA power, it will not condemn Pacificorp's distribution network. Delay would be costly with no redeeming jurisprudential values. For example, an adverse resolution after condemnation could leave Alturas without a firm power supply while the parties are seeking essentially declaratory relief. Postponing this appeal on ripeness grounds would neither clarify the issues nor permit the development of a better record. The essential facts establishing the right to declaratory relief are all before the court. *See Central Montana Elec. Power Coop., Inc. v. Administrator of Bonneville Power Admin.*, 840 F.2d 1472, 1474 (9th Cir.1988). This "case presents a sufficiently concrete case and controversy upon which relief properly may be fashioned." *National Basketball Ass'n v. SDC Basketball Club, Inc.*, 815 F.2d 562, 566 n. 2 (9th Cir.), *cert. dismissed,* ——

---

* The Honorable A. Wallace Tashima, United States District Judge, Central District of California, sitting by designation.

1. SVEC's reach, which is the subject of a current BPA investigation, is not before us in this litigation.

2. In 1983, after the Nevada Public Service Commission awarded SVEC territory that is located up to 84 statutory miles south of the Oregon–Nevada border, BPA informed SVEC that it would not provide power purchased at the priority firm rate to any such expanded areas beyond 75 air miles from the Oregon border. SVEC was told that it would need to look to its own resources to serve new customers outside the 75–mile limit with firm power.

U.S. ——, 108 S.Ct. 362, 98 L.Ed.2d 386 (1987).

The BPA's interpretation of the Planning Act normally is entitled to substantial deference. *Aluminum Co. of America v. Central Lincoln Peoples' Utility Dist.,* 467 U.S. 380, 389, 104 S.Ct. 2472, 2479, 81 L.Ed.2d 301 (1984); *California Energy Resources Conservation and Dev. Comm'n v. Johnson,* 807 F.2d 1456, 1459 (9th Cir. 1986). The principle of deference has special force in the context of the construction of the Planning Act. "BPA has longstanding expertise in the area, and was intimately involved in the drafting and consideration of the statute by Congress." *Aluminum Co.,* 467 U.S. at 390, 104 S.Ct. at 2479. Only upon a showing that the BPA's interpretation is unreasonable should we conclude that the SVEC proposal to serve Alturas is invalid and statutorily impermissible. The assessment of the reasonableness of the BPA's construction of the pertinent provisions of the Planning Act presents questions of law. *See Central Lincoln Peoples' Utility Dist. v. Johnson,* 735 F.2d 1101, 1116 (9th Cir 1984); *Central Montana Elec. Power Coop., Inc.,* 840 F.2d at 1476.

The petitioner argues that we should not defer to the BPA's expertise in construing legislation affecting that agency in this case because the BPA has a financial interest as an adverse party in competition with the petitioner in the sale of energy. We need not address this interesting question because our result would be the same under any standard of review.

In construing the Planning Act, we first look to the statute's language. *Central Montana Elec. Power Coop., Inc.,* 840 F.2d at 1477. "If the intent of Congress is clear [from the text], that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

The BPA's sales of power outside the Pacific Northwest region are subject to the Regional Preference Act. 16 U.S.C. §§ 837–837h. The Regional Preference Act provides, among other things, that all contracts for power sales outside the region must contain provisions allowing 60 days notice for termination of energy sales and 60 months notice for termination of capacity sales. 16 U.S.C. §§ 873b(a), 837b(c).

> "Pacific Northwest", "region", or "regional" means—
>
> (A) the area consisting of the States of Oregon, Washington, and Idaho, the portion of the State of Montana west of the Continental Divide, and such portions of the States of Nevada, Utah, and Wyoming as are within the Columbia River drainage basin; and
>
> (B) any contiguous areas, not in excess of seventy-five air miles from the area referred to in subparagraph (A), which are a part of the service area of a rural electric cooperative customer served by the Administrator on December 5, 1980, which has a distribution system from which it serves both within and without such region.

16 U.S.C. § 839a(14) (1982).

Under the Planning Act, BPA is required to exchange power at the priority firm rate with Pacificorp for resale to Pacificorp's residential and small farm customers located within the region. BPA interprets section 839a(14) of the Planning Act as not allowing BPA to exchange power at the priority firm rate with Pacificorp or other privately owned utilities outside the area described in paragraph A of the statute. BPA believes that paragraph B permits it to serve preference customers outside the paragraph A area, but only if the preference customer is "contiguous" with "the region" and not more than 75 miles outside the states enumerated in section 839a(14)(A). This interpretation puts Pacificorp's distribution system at risk of being condemned by any city within 75 miles of the Oregon border and contiguous with a rural electric cooperative. There are several such Pacificorp cities in northern California.

Pacificorp makes two arguments. First, it claims that BPA priority firm power may

not be used by rural electric cooperatives to serve any additional areas in California not being served on the date of the passage of the Planning Act, December 5, 1980. Second, it argues, even if an additional area may properly be served under the Act, that annexation area must itself be contiguous to Oregon.

■ Pacificorp argues first that BPA's marketing area was frozen on the effective date of the Planning Act, claiming that the phrase "on December 5, 1980" modifies the antecedent phrase, "the service area of a rural electric cooperative customer served by the Administrator." *See* 16 U.S.C. § 839a(14) (1982). Pacificorp thus contends that BPA could not provide priority firm power to areas that it was not serving via rural electric cooperatives on December 5, 1980.

We must reject this argument. The clear language of the statute supports BPA's reading. The date limitation "on December 5, 1980" refers directly back to the antecedent phrase, "rural electric cooperative customer served by the Administrator," not to "service area." *See id.* This limitation was intended to freeze only the number of cooperative customers, not the area served by these customers. Because SVEC was a customer of BPA prior to December 5, 1980, the date limitation in section 839a(14) does not preclude otherwise eligible new areas from being considered part of the "Pacific Northwest" for purposes of that statute. Moreover, fairly explicit legislative history supports this reading of the statute. *See* 125 Cong. Rec. S11,600–01 (daily ed. Aug. 3, 1979), *reprinted in Legislative History of the Pacific Northwest Electric Power Planning and Conservation Act* 421, 436 (1981) [hereinafter *Legislative History* ] (colloquy between Sen. Jackson and Sen. Cannon) (confirming that the act as drafted would permit an existing cooperative to extend service to new customers within the 75–mile range). Senator Cannon expressed concern that isolated ranches ten or twenty miles from the nearest power pole would be left out.

■ Second, Pacificorp argues that BPA's offer to SVEC violates section 839a(14) because the area to be served is not contiguous to the Oregon border. Pacificorp claims that the phrase "any contiguous areas" refers solely to the last antecedent, which enumerates the seven states which are defined as part of the "Pacific Northwest" without regard to contiguity. *See* 2A *Sutherland on Statutes and Statutory Construction,* § 47.33, at 245 (4th ed. 1984) (stating that "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent" and that "a proviso usually is construed to apply to the provision or clause immediately preceding it").

The statute's use of the term "contiguous" is ambiguous on its face, leading inevitably to the question, "contiguous to what?" While Pacificorp's reading of the contiguity requirement is somewhat appealing on its face, we reject it because it would lead to an absurd result. Under Pacificorp's reading of the statute, ranchers and other customers who are not adjacent to the border but are within the 75–mile limit would be able to obtain the benefits of BPA power or not depending upon choices made by consumers immediately adjacent to the border who either had already joined the cooperatives or had declined to join the cooperatives. The wholly whimsical result of allowing the consumers closer to the border to form a barrier preventing new consumers from establishing contiguity with the border militates against such a reading unless no other reading is possible. We doubt that Congress intended such a result. Nor do we believe Congress wanted the 75–mile strip to be gerrymandered with panhandles reaching to touch a border at some inconvenient point.

We find, therefore, that the "contiguous areas" language of section 839a(14)(B) should be construed to require that new areas that are annexed to existing service areas need only be within the 75–mile limit and contiguous to existing service areas which themselves touch the areas enumerated in section 839a(14)(A). While this interpretation may afford little independent meaning to the term "contiguous," it effec-

tuates the remainder of the statutory language and accords with legislative history.[3] *See* 125 Cong. Rec. S11,600 (daily ed. Aug. 3, 1979), *reprinted in Legislative History* 436 (colloquy between Sen. Cannon and Sen. Jackson) (confirming that existing cooperatives could extend service to areas within the 75–mile range without suggesting an additional contiguity requirement).

■ Pacificorp next argues that 16 U.S.C. § 839(5) (1982)[4] precludes the BPA from interfering with its existing state regulated system for the distribution of electric power to cities in California. Pacificorp's contention that section 839(5)(A) is a savings clause preventing BPA expansion flies in the face of a history of expansion authorized by law. The savings clause was included only to show that the Planning Act was not intended to divest distribution rights of current private and public utilities and other non-Federal entities. *See* H.R. Rep. No. 976, 96th Cong., 2d Sess., pt. 1, at 50 (1980), *reprinted in Legislative History* 333, 382.

Pacificorp also contends that it will be displaced by SVEC's attempt to supply Alturas with priority firm power consequent to the condemnation of its facilities, thereby violating the provision that "electric utility systems ... for the ... distribution ... of electric power shall be construed to be maintained." 16 U.S.C. § 839(5)(A) (1982). However, Pacificorp ignores section 839(5)(B), which directs that the Planning Act should "not be construed to limit or restrict the ability of customers to take

actions in accordance with ... State law, including ... actions to plan, develop, and operate resources." 16 U.S.C. § 839(5)(B). Nothing in the language of section 839(5) indicates that Congress intended to prevent new preference customers from joining existing cooperative service areas even at the expense of condemnation of an existing investor-owned entity such as Pacificorp.

The petition for review is denied. Neither party to recover costs against the other.

---

3. Pacificorp also argues that BPA's prior administrative interpretation of the language relevant here indicates that BPA's position here is inconsistent. In the only other disputed interpretation of section 839a(14)(B), the BPA, in a letter to Harney Electric Cooperative, stated that in order for BPA to provide priority firm power to a proposed new load located in uncertificated territory in Nevada, that territory must physically touch the area described in section 839a(14)(A). However, the territory sought to be served was not contiguous to Harney's existing service area. The BPA's letter does not stand for the proposition that service areas that are contiguous to the present service area of a qualifying cooperative must also be independently contiguous to the region.

4. According to section 839(5), the Planning Act is intended, in part,

to insure, subject to the provisions of this chapter—
(A) that the authorities and responsibilities of State and local governments, electric utility systems, water management agencies, and other non-Federal entities for the regulation, planning, conservation, supply, distribution, and use of electric power shall be construed to be maintained, and
(B) that Congress intends that this chapter not be construed to limit or restrict the ability of customers to take action in accordance with other applicable provisions of Federal or State law, including, but not limited to, actions to plan, develop, and operate resources and to achieve conservation, without regard to this chapter[.]
16 U.S.C. § 839(5) (1982).