WANGER, District Judge:
Petitioners, Clair S. Huffman and his wife, Patricia S. Huffman, now deceased, appeal from the Tax Court’s partial grant of their motion for costs and attorney’s fees requested under I.R.C. § 7430, as amended by the Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100-647, 102 Stat. 3342, § 6239(a) (“TAMRA”), which allows the recovery of “reasonable administrative costs” and “reasonable litigation costs” by a prevailing party in a tax case. I.R.C. § 7430(a).[1] The Commissioner cross-appeals. We affirm in part, reverse in part, and remand.
I
ISSUES
1. Did the Tax Court err as a matter of law in bifurcating the analysis under § 7340 to determine whether the “United States’ position in the proceeding” was “substantially justified” into two stages: the “administrative stage,” which concerns the notice of deficiency, and the “judicial stage” which concerns the government’s answer to the Tax Court petition? [2]
*1141 2. Assuming bifurcated analysis is proper under § 7430, did the Tax Court err as a matter of law, or otherwise abuse its discretion, by considering only the answer filed by Respondent in the judicial proceeding and in holding that the United States’ position in the judicial proceeding was substantially justified?
3. Did the Tax Court err as a matter of law in holding that the tax specialty of taxpayers’ counsel was not, nor were any other “special factor[s]” shown, within the meaning of § 7430(c)(l)(B)(iii), which would justify awarding Clair S. Huffman, individually and as executor, attorney’s fees in excess of the statutory rate of $75.00 per hour?
4. Did the Tax Court err as a matter of law in determining that, while Petitioners were entitled to reimbursement for attorney’s fees in excess of $75.00 per hour due to an increase in the cost of living, the measurement of the cost of living adjustment was from October 1, 1981 (the effective date of the Equal Access to Justice Act) and not from January 1, 1986 (the effective date of the cost of living adjustment in § 7430)?[3]
5. Did the Tax Court abuse its discretion in finding that 15.9 hours of attorney time and $20.00 for costs were all the recoverable fees and costs?
BACKGROUND
The procedural history of this matter is extended, and largely irrelevant to the disposition of the issues. The Internal Revenue Service engaged in stonewalling and outright perjury in handling the administrative disposition of Petitioners’ notice of deficiency after this notice was initially issued in violation of the TEFRA partnership audit rules. Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, § 402, 96 Stat. 324, 648-69 (codified as amended at I.R.C. §§ 6221-6233). There followed an administrative hearing, a subsequent petition in Tax Court, a concession by the Commissioner to judgment on the pleadings, and then a motion by Petitioners pursuant to section 7430 and Tax Court Rule 231 for litigation costs and attorney’s fees. The issues on appeal arise from the Tax Court’s treatment of this motion.
Petitioners sought reimbursement for attorney’s fees in the total amount of $8,400.00, representing 67.2 hours of attorney time at $125.00 per hour, plus costs of $156.77. Five point nine attorney hours were spent before the Tax Court petition was filed. Eleven point three attorney hours were spent after the petition was filed, but before the attorney’s fees motion was prepared. Attorney hours in the amount of 50.0 were devoted to recovering taxpayers’ reimbursement for attorney’s fees and costs.[4]
*1142 The Tax Court granted, in part, Petitioners’ motion for costs and attorney’s fees. Reimbursement for “reasonable administrative costs” under section 7430(a)(1) for all the 5.9 attorney hours incurred pre-petition after receipt of the notice of deficiency plus $20.00 costs was allowed upon the finding that the Commissioner’s position as to the notice of deficiency was not substantially justified because the partnership adjustments violated the partnership audit rules. The award included the reasonable attorney’s fees incurred to “persuade [the Commissioner] that the notice of deficiency was improper and to rescind that notice of deficiency.”
The court did not award Petitioners reasonable “litigation costs” under section 7430(a)(2), and held that the Commissioner’s position in the “judicial proceeding” was substantially justified because the answer fully conceded the case. Nevertheless, the court found it was reasonable for Petitioners’ counsel to have spent time preparing, filing, discussing, and prosecuting the attorney’s fees and costs motion, and awarded reimbursement for 10 of the 50 hours claimed. The balance was disallowed because the Tax Court “believe[d] that it was unreasonable to expend 50 hours of attorney time to recover costs pertaining to the entire 17.2 hours incurred prior to the Motion.”
The $75.00 hourly rate, specified by section 7430 unless “the court determines that an increase in the cost of living or a special factor ... justifies a higher rate,” was enhanced only for cost-of-living increases. § 7430(c)(l)(B)(iii). The Tax Court rejected Petitioners’ claim that they were entitled to a special factor enhancement to $125.00 per hour, held that the prevailing market rate in a given geographic area is not a special enhancement factor under section 7430, and disagreed that “the dearth of qualified tax attorneys in Ventura County,” justified fee enhancement. “It observed that [i]t is not enough to simply say ‘that lawyers skilled and experienced enough to try the case are in short supply.’ ” The court rejected Petitioners’ argument that their attorney Staker’s “specialized training” in tax law was a special factor, and held that his expertise was not “needful for the litigation in question.” In applying a cost-of-living adjustment (“COLA”), the court chose October 1, 1981, as the baseline date because that was the date of enactment of a similar attorney’s fee provision contained in the Equal Access to Justice Act, Pub.L. No. 96-481, § 204(a), 94 Stat. 2321, 2327-29 (1980) (codified as amended at 28 U.S.C. § 2412(d)) (“EAJA”).
Petitioners were awarded $1,628.49 attorney’s fees for 15.9 hours of attorney’s services at the rate of $102.42 per hour,[5] and $20.00 as “administrative costs.” The remaining 51.3 hours of attorney time claimed and $136.77 of costs were held to be “nonrecoverable litigation costs.”
Petitioners’ appeal was timely. The Commissioner cross-appeals the Tax Court’s calculation of the COLA under section 7430. Petitioners also seek recovery of fees and costs incurred in this appeal pursuant to section 7430. See Prandini v. National Tea Co., 585 F.2d 47, 53 (3d Cir. 1978), cited with approval in In re Nucorp Energy, Inc., 764 F.2d 655, 660-661 (9th Cir.1985).
The central question presented under § 7430 is: At what point or points in the proceeding does the determination of whether there was substantial justification of government conduct commence? Once a determination of the point of commencement has been made and it is found that no substantial justification exists, do the effects of that determination persist throughout the entire proceedings? Petitioners contend that the determination of no substantial justification should be made at the earliest possible point in the proceeding consistent with law, and that the determination is thereafter binding. The Commissioner contends that an initial determination in administrative proceedings is not binding on later judicial proceedings.
*1143 JURISDICTION AND STANDARDS OF REVIEW
Jurisdiction is conferred by I.R.C. § 7482. The Tax Court’s construction of section 7430, as to the bifurcation and cost-of-living adjustment issues, involves questions of law which we review de novo. Sliwa v. Commissioner, 839 F.2d 602, 605 (9th Cir.1988). The Tax Court’s determination of whether the Commissioner’s position was “substantially justified” is reviewed for abuse of discretion, Bertolini v. Commissioner, 930 F.2d 759, 761 (9th Cir.1991), as is its determination of the amount of attorney’s fees to be awarded. Pierce v. Underwood, 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988) (setting review standard for award of attorney’s fees under the Equal Access to Justice Act).
The reasoning employed by the courts under the attorney's fees provision of the Equal Access to Justice Act applies equally to review under section 7430. Estate of Merchant v. Commissioner, 947 F.2d 1390, 1393 (9th Cir.1991) (“[M]ost of the Supreme Court’s reasoning [under the EAJA] applies equally to review under [section 7430]”);Oliver v. United States, 921 F.2d 916, 922 (9th Cir.1990) (“There is little dispositive difference between section 7430 and the EAJA.”).
DISCUSSION

Construction Of Section 7Jf30: Bifurcation.

Section 7430 was amended in 1988 to delineate separately the administrative and court phases of the proceedings by replacing the term “civil proceeding” with “administrative or court proceeding.” The terms “reasonable administrative costs” incurred in an administrative hearing and “reasonable litigation costs incurred in connection with” a court proceeding were also added. Corresponding changes were made throughout the statute.
In the amended subsection (c)(7), which defines the key phrase “position of the United States,” “civil proceeding” was changed to “judicial proceeding” in paragraph (A), while language concerning “administrative proceeding[s]” in paragraph (B) was rewritten.[6]
*1144 Divergent judicial opinions exist as to whether the phrase “position of the United States” referred to the government’s position both in prelitigation administrative proceedings and after the commencement of litigation. 14 Jacob Mertens, Law of Federal Income Taxation § 50.566 (1992). Sliwa, 889 F.2d at 606, held that under the 1982 version of section 7430, “position of the United States” referred to the government’s position in both prelitigation administrative proceedings and after commencement of litigation, not only the government’s in-court litigation position.[7] However, this Court has recognized that “[the] rule of Sliwa does not apply to section 7430 in its present form, after the 1986 and 1988 amendments.” Estate of Merchant, 947 F.2d at 1392, n. 6; see also Bertolini, 930 F.2d at 761 (implying that Sliwa was not applicable to cases decided after the 1986 amendment to section 7430). The interpretation of amended section 7430 presents a question of first impression in this circuit.
The Tax Court bifurcated the inquiry whether the “position of the United States” was substantially justified: 1) in the administrative proceeding, where the “position of the United States” as to the deficiency notice was held not to be substantially justified; and 2) the judicial proceeding, where the “position of the United States,” as determined by its answer which conceded the case, was held to be substantially justified. The Tax Court found that because the plain language of amended 7430(c)(7), unlike that of pre-1988 § 7430, refers to the administrative proceeding separately from the judicial proceeding, Congress intended that the United States could take two positions, which can be evaluated separately to determine if each was “substantially justified.” The Tax Court acknowledged but did not follow Sliwa because that decision was-“not applicable to cases decided under TAMRA.” It reasoned that “ ‘in a civil proceeding’ [the language of the pre-1988 statute] is much broader than ‘in a judicial proceeding’ [the current statutory language],” an interpretation underscored by a separate provision “in the [amended] statute for administrative proceedings.”
Petitioners assert that the “position of the United States” is determined solely by the notice of deficiency and cannot be redetermined at the litigation stage of the case. They advance several arguments, but we reject them and uphold the bifurcated approach adopted by the Tax Court.

The Plain Language Of Section 7)30

Petitioners first argue that the 1988 amendment to section 7430, which added paragraphs (i) and (ii) to subsection (c)(7)(B) demonstrates that the “position of the United States” is established as of the date of the notice of deficiency and does not change for purposes of evaluating whether the United States’ position in the judicial proceedings is “substantially justified.” In other words, paragraphs (i) and (ii) not only modify subsection (c)(7)(B), but also modify subsection (c)(7)(A).
Second, even if paragraphs (i) and (ii) do not modify subsection (c)(7)(A), petitioners argue that the term “judicial proceeding” is an umbrella term which includes “administrative proceeding” and “court proceeding;” therefore, the “position of the United States” is still determined by the earlier of (i) or (ii), unless there is no IRS appeals decision or notice of deficiency, in which case the “position of the United States” is determined by the answer in the litigation. Neither of these arguments has merit.

Effect Of Paragraphs (i) and (ii)

The first contention is defeated by a facial reading of § 7430(c)(7), with due re *1145 spect for grammar and punctuation, and leads to the conclusion that paragraphs (c)(7)(B)(i) and (ii) are alternative objects of the preposition “of,” the final word of the introductory clause in (c)(7)(B), and modify only subsection (c)(7)(B) and not subsection (c)(7)(A). As a general rule, a modifying clause applies only to its immediate antecedent. 2A Norman J. Singer, Sutherland Statutory Construction § 47.33 (5th ed. 1992); see e.g., Pacijicorp. v. Bonneville Power Admin., 856 F.2d 94, 97 (9th Cir. 1988). This conclusion is reinforced by the limitation set forth in subsection (c)(2)(B), which defines “reasonable administrative costs” and fixes those costs by reference to language identical to that in subsection (c)(7)(B)(i) and (ii).

Judicial Proceeding

Petitioners’ second contention is resolved by our reading of the term “judicial proceeding” as synonymous with “court proceeding,” and not as an umbrella term that includes the term “administrative proceeding.” Words with a fixed legal or judicially settled meaning, where the context so requires, must be presumed to have been used in that sense. 1 Mertens at § 3.36 (1991) citing Real Estate-Land Title & Trust Co. v. United States, 309 U.S. 13, 15, 60 S.Ct. 371, 372, 84 L.Ed. 542 (1940). Words of both technical and common usage are construed in the latter sense unless the statute plainly indicates otherwise. 1 Mertens at § 3.36, citing, Willcuts v. Milton Dairy Co., 275 U.S. 215, 218, 48 S.Ct. 71, 72, 72 L.Ed. 247 (1927).
Dictionary definitions tend to support the construction of “judicial proceeding” as synonymous with “court proceeding.” See, e.g., Black’s Law Dictionary, 46 (6th ed.1990) (defining “administrative procedure” as “[mjethods and processes before administrative agencies as distinguished from judicial procedure which applies to courts____” (emphasis added)). By contrast, courts have held that actions taken or proceedings by the IRS prior to initiation of litigation in the Tax Court or the district court are “non-judicial in nature.” See, United States v. Baggot, 463 U.S. 476, 479, 103 S.Ct. 3164, 3166, 77 L.Ed.2d 785 (1983) (although a Tax Court petition for redeter-mination of tax or a suit for refund is a “judicial proceeding,” an IRS audit, including the IRS’ informal internal appeal component, is not itself a “judicial proceeding.”); United States v. Ryan, 455 F.2d 728, 733 (9th Cir.1971) (IRS investigation is not a judicial proceeding.).
Petitioner’s cases cited as contrary authority, e.g., Alleghany Corp. v. Pomeroy, 898 F.2d 1314 (8th Cir.1990) concern the different issue of fixing the limits of the abstention doctrine. In that context a “judicial proceeding” can include any preceding and related “administrative proceeding.” Broad principles of comity and federalism are not here implicated; rather, our focus is on the interpretation of the specific language of a technical statute. Both common usage and relevant case law require that “judicial proceeding” be interpreted as synonymous with “court proceeding” as defined in section 7430(c)(6). The terms “court” and “judicial” are hereafter used interchangeably.'

Interpretation Of The Statute As A Whole

In analyzing the plain meaning of section 7430, the guiding principle is that a statute must be examined as a whole, with all of its sections and subsections in mind. See, Hellmich v. Hellman, 276 U.S. 233, 237, 48 S.Ct. 244, 245, 72 L.Ed. 544 (1928). The section 7430(c)(4)(A) definition of “prevailing party” cannot be fully understood without reading section 7430(a). Subsection (c)(4)(A)(i) refers only to “the proceedings” (emphasis added) to which subsection (a) applies. In requiring that the prevailing party establish that the United States’ position was not substantially justified. Subsection (a) refers alternatively to “any administrative or court proceeding,” and to both administrative costs and litigation costs. Prior to the 1988 amendment, § 7430 referred only to “any civil proceeding” (7430(a) 1987); the amended version distinguished and separately defined “administrative proceedings” and “court proceedings.” 7430(c)(5), (6). Looking at § 7430 as a whole, “the proceeding” must refer to either the court or the administra *1146 tive proceeding or both. It follows that the prevailing party in both administrative proceedings and judicial proceedings who seeks administrative and litigation costs must separately establish that the United States’ position in each of the proceedings was not substantially justified.
This interpretation is consistent with subsection (c)(7), which defines the position of the United States as the position taken in the administrative proceeding and the position taken in the judicial proceeding. Thus the position taken in the administrative proceeding does not automatically apply to the judicial proceeding. According to the plain language of § 7430 and under the normal rules of statutory construction, a bifurcated analysis of “substantially justified” should be made in each proceeding.

Legislative History

Although the starting point for analyzing a statute is with its language, the court may look beyond the language of the statute to the legislative history where the language is ambiguous, or where the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters. United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981).
Petitioners urge that the legislative history of § 7430 reveals Congress’ intent that the “position of the United States” is defined solely by the earlier of the notice of deficiency or the taxpayer’s receipt of the IRS Office of Appeals’ notice of decision. In support of this argument, Petitioners cite the House of Representatives Conference Report to Accompany H.R. 4333:
Position of the United States. — The conference agreement follows the Senate amendment, with the modification that the position of the United States is determined as of the earlier of (1) the date of the receipt by the taxpayer of the notice of the decision of the IRS Office of Appeals, or (2) the date of the notice of deficiency. If neither is applicable, the position of the United States is that taken in the litigation.
2 Technical and Miscellaneous Revenue Act of 1988, Conference Report to Accompany H.R. 4333, H.R.Rep. No. 1104, (Vol.2) 100th Cong.2d Sess. 226 (1988), U.S.Code Cong. & Admin.News 1988, 4515, 5286 (emphasis added), reprinted in 1988-3 C.B. 473, 716. Based on the last sentence quoted above, Petitioners argue that bifurcation is impermissible. They claim that only when there is no IRS appeals decision or notice of deficiency is the “position of the United States” defined by the position taken in the litigation. When, however, either an IRS appeals decision or a notice of deficiency exists, the “position of the United States” is defined by the earlier of these, and the position taken in the litigation is irrelevant.
The Conference Report, however, is more reasonably read to mean “that the position of the United States [in an administrative proceeding] is determined as of, ” the position taken in the earlier of (1) or (2). This interpretation is more in keeping with the plain language of § 7430. Nothing in the Report forecloses the possibility of a change in the position of the United States from the administrative to the court proceeding.
To permit a bifurcated analysis of the reasonableness of the Government’s position does not undermine Congress’ expressed intent in section 7430 to “deter abusive actions and overreaching by the Internal Revenue Service and ... enable individual taxpayers to vindicate their rights regardless of their economic circumstances.” H.R.Rep. No. 404, 97th Cong. 1st Sess. 11 (1981). To the contrary, a bifurcated analysis not only ensures that the prevailing taxpayer is reimbursed for pre-litigation and litigation costs, but also supports Congress’s intent that before an award of attorney’s fees is made, the taxpayer must meet the burden of proving that the Government’s position was not substantially justified. It affords another opportunity for the United States to reconsider an inappropriate position.

Case Law

Although the Tax Court correctly found that Sliwa was not applicable to cases decided under TAMRA, that case is instructive. Sliwa rejects a narrow construction *1147 of the term “civil proceeding” which would limit the court’s examination of government conduct to that following the initiation of litigation by the taxpayer, reasoning “that such a restrictive construction of section 7430 is unwarranted, and, indeed, undermines the legislative intent of the statute to enable taxpayers to ‘vindicate their rights regardless of their economic circumstances.’ ” Sliwa, 839 F.2d at 607.
Petitioners erroneously argue that a construction of section 7430 which permits a bifurcated analysis of “substantially justified” cannot be harmonized with the judicial concern expressed in Sliwa. That concern was that the prevailing taxpayer would be foreclosed altogether from reimbursement for attorney’s fees, when the government’s prelitigation position was unreasonable but its litigation position was reasonable. This concern was expressly addressed by the 1988 amendments, which we construe to permit a bifurcated analysis that examines the reasonableness of the government’s position at both the administrative level and the court level.
Estate of Merchant is said by Petitioners to disapprove a bifurcated analysis of “position of the United States.” That case held that, under the 1982 version of section 7430, in making the determination that the position of the United States in the proceeding was unreasonable, “the reasonableness of the government’s prelitigation administrative actions, as well as that of its later litigating position, must be taken into account.” Estate of Merchant, 947 F.2d at 1392, citing Sliwa, 839 F.2d at 605-07. In a footnote, the court added: “[Section 7430(c)(7)(B) (1988) ] now provides that the ‘position of the United States’ in tax proceedings is to be determined from the date of the receipt by the taxpayer of the notice of decision of the Internal Revenue Service Office of Appeals, or the date of the notice of deficiency, whichever is earlier.” Id. at 1392, n. 6 (emphasis added). Petitioners suggest that the juxtaposition of these two statements creates an inference that under the 1988 amendments to § 7430, the “later litigating position” of the United States is no longer relevant when the government’s position at the earlier of the taxpayer’s receipt of the notice of the IRS Office of Appeals decision or the notice of deficiency is unreasonable.
We disagree. The interpretation which comports with the plain language of section 7430 is that the phrase “from the earlier of the taxpayer’s receipt of the notice of the IRS Office of Appeals decision or the notice of deficiency” marks the starting point, not the ending point, of the analysis of the United States’ position. Under this interpretation, the position of the United States starts with the earlier of the two, but has room to change toward reasonableness[8] between the administrative and court proceedings. The bifurcated analysis used by the Tax Court is consistent with this circuit’s case law interpreting § 7430 prior to the 1988 amendments.

Did The Tax Court Abuse Its Discretion In Determining That Respondent’s Position In The Judicial Proceeding Was Substantially Justified?

In order to recover an award of attorney’s fees from the Government, a tax litigant must qualify as a “prevailing party” under section 7430(c)(4)(A). “First, the litigant must ‘establis[h] that the position of the United States ... was not substantially justified.’ Second, the taxpayer must also ‘substantially prevail[ ]’ with respect to either ‘the amount in controversy’ or ‘the most significant issue or set of issues presented.’ § 7430(c)(4)(A)(ii).” Heasley v. Commissioner, 967 F.2d 116, 120 (5th Cir. 1992) (emphasis in original).
The statutory phrase “substantially justified” means “ ‘justified in substance or in the main’ — that is, justified to a degree that could satisfy a reasonable person.” Pierce v. Underwood, 487 U.S. at 565, 108 S.Ct. at 2550. “That is no different from the ‘reasonable basis both in law and fact’ formulation ... To be ‘substantially justi *1148 fied’ means, of course, more than merely undeserving of sanctions for frivolousness ...” Id. at 565-66, 108 S.Ct. at 2550.

Commissioner’s Concession Of Liability.

Generally, the position of the United States in the judicial proceeding[9] is established initially by the Government’s answer to the petition. See, e.g., Sher v. Commissioner, 861 F.2d 131, 134-35 (5th Cir.1988). Here, the Tax Court concluded that the position taken in the judicial proceeding was substantially justified because the Commissioner, in his answer:
admitted that petitioners had no tax liability, but denied that the issuance of the notice of deficiency was improper____ Thus, it is clear that [the Commissioner’s] position in the judicial proceeding (without regard to actions pertaining to the Motion) was not only not substantially justified, but was in clear recognition of the applicable provisions of the law.
Case law holds that if the Government concedes the petitioner’s case in its answer, its conduct is reasonable. See, Bertolino, at 761 (Government’s settlement of the case “with reasonable dispatch” after the complaint was filed was reasonable); however, Petitioners correctly note that, while the Commissioner’s answer in part admitted that Petitioners owed no tax liability, his denial that the issuance of the original deficiency notice was improper was wrongful.
Normally, most of the elements, evidence and other insights gleaned from pretrial activities bearing on whether the Government’s position was substantially justified may be known only to the Tax Court, and can only be revealed to the appellate court through “the unaccustomed task of reviewing the entire record, not just to determine whether there existed the usual minimum support for the merits determination made by the factfinder below, but to determine whether urging of the opposite merits determination was substantially justified.” Pierce, 487 U.S. at 560, 108 S.Ct. at 2547. Because of the fact-bound nature of the inquiry, a deferential abuse of discretion review of the Tax Court’s finding of substantial justification is appropriate. See, id.; Estate of Merchant, 947 F.2d at 1393.
The Commissioner’s opposition to Petitioners’ motion for attorney’s fees was based upon Revenue Officer Penny’s declaration under penalty of perjury that Penny personally mailed a “no change” letter to Petitioners. At a later hearing on the fees issue, the Commissioner admitted that the Penny declaration was false as the alleged “no change” letter had in fact never issued. The Tax Court looked to the concession of the substantive tax issues and did not examine the reasonableness of the Commissioner’s simultaneous assertion in the answer that the deficiency notice was substantially justified, which extended the dispute. The parties agree that the Commissioner's administrative proceeding position was substantially unjustified. Petitioners' attorney was compelled to incur costs to prove the Commissioner was unjustified in his administrative proceeding position.

Attorney’s Fees And Costs

The Congressional intent behind section 7430 is not served by looking only to the answer to determine whether the government’s position in the judicial proceeding was “substantially justified.” The better approach is to examine the parties’ conduct within each stage of the case. Here, most of Petitioners’ attorney’s fees arose from the dispute over entitlement to and the amount of recoverable attorney’s fees and costs. This kind of satellite litigation is generally referred to as “fees for fees litigation.” Buchanan v. United States, 765 F.Supp. 642 (D.Or.1991). The Tax Court awarded Petitioners some attorney’s fees associated with “preparing, filing, discussing, and defending the Motion [for attorney’s fees and costs].” Here, the Tax Court appears to have divided the time spent “preparing, filing, discussing, and defending the Motion” between the administrative proceeding and the judicial proceed *1149 ing and allowed 10 of Petitioners’ 50 hours spent on the attorney’s fees motion. No explanation is provided for the calculation of this allowance.
Certainly the Commissioner may be justified in disputing a claim for excessive fees in some situations. Here, however, the Commissioner refused in both proceedings to acknowledge that Petitioners were entitled to fees or costs whatsoever. This was unjustified. As a result, Petitioners’ attorney incurred costs to prove that the Commissioner was unjustified in refusing to acknowledge that any fees should be awarded. So long as the government’s position justifies recovery of fees, any reasonable fees to recover such fees are recoverable. See, e.g., Powell v. Commissioner, 891 F.2d 1167, 1172 (5th Cir.1990) (“[WJhere the government’s underlying position is not substantially justified, plaintiff is entitled under the EAJA [and § 7430] to recover all attorney’s fees and expenses reasonably incurred in connection with the vindication of his rights, including those related to any litigation over fees, and any appeal.”); Russell v. Heckler, 814 F.2d 148, 155 (3d Cir.1987) (Where the sole basis for the government’s opposition to the fee petition “is the alleged substantial justification of the government’s position in the underlying proceedings ... the petitioner will almost always, if not always, be entitled to fees for litigation over an EAJA fee petition if she is entitled to fees for the underlying litigation;” (vacated on other grounds sub nom. Bowen v. Russell, 487 U.S. 1229, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988)).
It cannot be determined whether the Tax Court correctly applied these principles in awarding fees for only one-fifth of the alleged time spent to recover fees. We therefore reverse and remand for the determination of the proper recovery of fees incurred to recover fees.

Did The Tax Court Abuse Its Discretion In Refusing To Award Petitioners Attorney’s Fees In Excess Of The Statutory Rate Of $75.00 Per Hour?

The measure of reasonable attorney’s fees awarded as administrative or judicial proceeding costs under § 7430(a) is “based upon prevailing market rates for the kind or quality of services furnished” but “shall not be in excess of $75.00 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate.” § 7430(c)(1)(B)(iii).
Petitioners argue that they are entitled to an award of attorney’s fees in excess of the statutory limit because: (1) the prevailing rate in Ventura County is $125.00 per hour; (2) Petitioners’ attorneys are specialists in tax; and, (3) such specialists are of limited availability in Ventura County. In this appeal, Petitioners go further. They suggest this Court adopt a rule that “recognizes tax specialists” by enhancing attorney’s fees in every § 7430 case in which a taxpayer is represented by a tax lawyer.
In Pierce, the Supreme Court interpreted a substantially identical provision of the EAJA and held that “the prevailing market rate” is not a “special factor” which would justify an upward departure from the $75.00 hourly rate set by Congress:
[T]he “special factor” formulation suggests Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers’ fees, whatever the local or national market might be____ [T]he exception for “limited availability of qualified attorneys for the proceedings involved” must refer to attorneys “qualified for the proceedings” in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question— as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation.
487 U.S. at 572, 108 S.Ct. at 2553 (emphasis added).
Here, the Tax Court interpreted Pierce to mean that, to qualify for a higher than statutory rate, the attorney must possess not just general training in tax, but rather special training in an area “needful for the litigation in question.” The Tax Court con- *1150 eluded that while attorney Staker Possessed Specialized skill and knowledge in the area of TEFRA partnerships, the Commissioner conceded the underlying TEFRA issue; thus the only issues litigated by Staker in the Tax Court were the fees issues, which did not require his specialized skills. Accordingly, Staker’s specialized skills in TEFRA were not “needful for the litigation.”
The Tax Court’s holding that general tax expertise does not qualify as a “special factor” warranting an enhancement of the statutory fee award is in keeping with the language of § 7430, logic, and the case law. As the Second Circuit has explained:
Section 7430 applies only to tax cases; therefore most of the applications for attorney’s fees under it would be to pay attorneys who have brought or defended tax cases. Such lawyers presumably all have a certain degree of “tax expertise.” To suppose that Congress intended them all to be paid at a higher than $75 an hour rate would allow this “special factor” exception to swallow the $75 an hour rule.
Cassuto v. Commissioner, 936 F.2d 736, 743 (2d Cir.1991). Accord Bode v. United States, 919 F.2d 1044, 1050 (5th Cir.1990) (“Clearly, counsel’s expertise in tax law, in and of itself, is not a special factor warranting a fee award in excess of $75 per hour under section 7430.”). In light of the foregoing, it is unnecessary to discuss Petitioners’ contention that tax specialists are allegedly not available in Ventura County.

What Is The Effective Date From Which To Measure The Cost-Of-Living Adjustment (COLA) Provided in § 7)30?

Based on a COLA pursuant to § 7430(c)(l)(B)(iii), the Tax Court awarded Petitioners a higher rate than the $75 per hour statutory attorney's fee. The Tax Court based the adjustment on the Consumer Price Index (CPI) since October 1, 1981, the date of the enactment of the EAJA’s $75 hourly cap. The Commissioner cross-appeals the Tax Court’s application of the 1981 CPI and argues that the proper starting point for calculating the COLA is from the January 1, 1986, the effective date of the § 7430 COLA provision.
Petitioners counter by asserting the cross-appeal is improper due to the Commissioner’s alleged failure to raise the issue before the Tax Court. The Commissioner responds that his objection to Petitioners’ costs as unreasonable preserved the issue. Moreover, Petitioners failed “expressly” to argue that October 1, 1981, was the starting point for calculating the COLA until their reply to the Commissioner’s objection. The Commissioner asserts that he was effectively prevented from addressing the issue by this failure.
The Commissioner did not dispute Petitioners’ evidence of cost-of-living figures for the greater Los Angeles area, did not object when the Tax Court held that it was going to use the CPI from the greater Los Angeles area, and did not submit any evidence of its own on the issue. Nevertheless, the Commissioner argues that a remand for the proper cost-of-living adjustment is unnecessary because those calculations already have been done by the Commissioner in another case, Bayer v. Commissioner, 61 T.C.M. (CCH) 2980 (1991), motion for reconsideration denied, 98 T.C. 19 (1992).
Generally, a party may not raise new issues on appeal. Taylor v. Sentry Life Ins. Co., 729 F.2d 652, 655 (9th Cir.1984) (per curiam). However, the COLA issue is important to the future application of section 7430, and we have discretion to hear it because it is solely a matter of statutory construction. Abex Corp. v. Ski’s Enterprises, Inc., 748 F.2d 513, 516 (9th Cir.1984).
To calculate the COLA from October 1, 1981, the Tax Court relied on its own precedent in Cassuto v. Commissioner, 93 T.C. 256, 272-273 (1989) as well as on cases decided under the EAJA. See, e.g., Animal Lovers Volunteer Assn., Inc. v. Car-lucci, 867 F.2d 1224, 1227 (9th Cir.1989); Ramon-Sepulveda v. Immigration & Naturalization Service, 863 F.2d 1458, 1463-64 (9th Cir.1988). After the Tax Court filed its decision in the instant case, Cassu- *1151 to was overturned by the Second Circuit. That Court reasoned as follows:
Congress clearly intended § 7430 to follow the same fee structure as the EAJA when it amended the statute in 1986 to “conform ... more closely to the Equal Access to Justice Act.” Before that time, § 7430 set forth no hourly fee reimbursement rate, but allowed simply for a maximum award of $25,000 in undifferentiated litigation costs. The 1986 amendment established the $75 an hour fee rate, and allowed courts to subsequently add COLAs to that rate. There is no evidence, however, that Congress intended to pre-date § 7430’s new structure to the date of the EAJA. If that had been Congress’ intent, it would have been easy for Congress to make this known, or to have simply calculated a COLA from 1981 to 1986, and made that the new base hourly rate.
936 F.2d at 742. (citation omitted). Petitioners argue that the Second Circuit opinion should not be followed by this Court because, in its subsequent opinion in Bayer, the Tax Court declined to follow Cassu-to. In addition, the Fifth Circuit has also applied the § 7430 COLA. See, Heasley, 967 F.2d at 125.
We find the Second Circuit’s reasoning compelling. If Congress intended the EAJA COLA to apply in § 7430 cases, it could have so provided very easily. The correct starting point for calculating the COLA is January 1, 1986.
Amount Of Fees And Costs Awarded The Tax Court awarded Petitioners fees for only 15.9 of 67.2 hours of attorney time and $20.00 in costs for all of the work done on the case. The Tax Court correctly applied a bifurcated analysis, but provided no detailed explanation as to how the award of fees and costs was calculated. Already mentioned was the court’s failure to offer any explanation as to why 10 hours were awarded for the judicial proceeding concerning fees. Likewise, the $20.00 award for costs appears arbitrary, as no deference to a cost in that amount or an explanation of how it was calculated appears in the record. Finally, the cost of the filing fee in the judicial proceeding should be allowed because the petition was necessitated by the Commissioner’s unjustified failure to respond in a timely fashion in the administrative phase.
CONCLUSION
The decision of the Tax Court is reversed and remanded for a redetermination of Petitioners’ entitlement to, and the amount of, costs and attorney’s fees in the judicial proceeding. The decision finding Petitioners entitled to attorney’s fees and costs in the administrative proceeding is affirmed, except that the Tax Court must recalculate the amount of attorney’s fees and costs. The decision enhancing attorney’s fees and costs by the EAJA 1981 COLA is reversed. On remand, the Tax Court shall apply the section 7430 COLA as of January 1, 1986.
Each party shall bear its own costs on appeal; Petitioners’ request for fees and costs associated with this appeal under section 7430 is denied.
AFFIRMED in part, REVERSED in part, and REMANDED.

. All statutory references are to the Internal Revenue Code (Title 26 of the United States Code) unless otherwise indicated. Section 7340 was added to the Internal Revenue Code in 1982. Pub.L. No. 97-248, § 292(a), 96 Stat. 324, 572-74 (1982). The parts of § 7430 relevant to this appeal were amended in 1986, effective for amounts paid after 9/30/86, in civil actions or proceedings commenced after 12/31/85 (Pub.L. No. 99-514, § 1551(h), 100 Stat. 2085, 2753 (1986)), and in 1988 by TAMRA, effective for civil actions or proceedings commenced after November 10, 1988. Where applicable the amendments are referred to or cited by the date of amendment, e.g., § 7430 (1988) or "the 1988 amendments."

. Section 7430(c)(7) reads as follows:
(7) Position of United States. — The term "position of the United States” means—
(A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, and
(B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of—
(i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or
(ii) the date of the notice of deficiency.

. Petitioners object to consideration of this issue because Respondent did not argue it below in the Tax Court.

. A more detailed breakdown of the attorney time for which Petitioners sought reimbursement is as follows:

Purpose Hours

Before filing Tax Court petition (5.9 hours):
Conferences, research and drafting petition. 5.9
After petition but before attorney’s fees motion (11.3 hours):
Review IRS answer, discussions with IRS. 0.8
Prepare motion to amend the caption and substitute parties. 1.4
Prepare motion for judgment on the pleadings. 3.3
Review proposed decision and discussion with IRS. 5.8
After attorney’s fees motion (50.0 hours):
Prepare motion for litigation costs and affidavits. 10.4
Prepare amendment to motion for litigation costs (to add one paragraph to include costs incurred after filing motion) and review IRS’ objection. 2.5
Reply to IRS’ objection. 24.6
Prepare for hearing on motion (includes 1.4 hours for work of co-counsel). 5.7
Attend hearing (includes 3.6 hours for co-counsel). 6.8
TOTAL 67.2

. The cost-of-living adjustment was based on inflation as measured by the consumer price index for all urban consumers ("CPI-U”) between February of 1989 and May of 1990.

. Prior to the 1988 amendments, pertinent parts of section 7430 provided:
AWARDING OF COURT COSTS AND CERTAIN FEES.
(a) In general. — In the case of any civil proceeding which is—
(1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and
(2) brought in a court of the United States (including the Tax Court and the United States Claims Court), the prevailing party may be awarded a judgment (payable in the case of the Tax Court in the same manner as such an award by a district court) for reasonable litigation costs incurred in such proceeding.
(c) Definitions.
(1) Reasonable litigation costs.
(2) Prevailing party.
(3) Civil actions. — The term "civil proceeding” includes a civil action.
(4) Position of United States. — The term "position of the United States” includes—
(A) the position taken by the United States in the civil proceeding, and
(B) any administrative action or inaction by the District Council of the Internal Revenue service (and all subsequent administrative action or inaction) upon which such proceeding is based.
******
26 U.S.C. § 7430(a), (c)(l)-(4) (1987) (emphasis added).
The 1988 amendments changed § 7430 as follows:
Subsection
(a) "In General.”:
“Civil proceeding” was changed to "administrative or court proceeding;” paragraph (2) ("brought in a court of the United States ...”) was deleted; "reasonable litigation costs incurred in such proceeding” was broken down into “reasonable administrative costs incurred in connection with such administrative proceeding” and "reasonable litigation costs incurred in connection with such court proceeding;”
Subsection (c) “Definitions.”:
Subsection (c)(1), "Reasonable litigation costs,” which included "reasonable court costs,” reasonable expenses and costs associated with experts and any studies, and attorney’s fees, was broken down into two subsections, (c)(1) "Reasonable litigation costs,” which includes reasonable court costs, reasonable expenses and costs associated with experts and any studies, and attorney’s fees, and (c)(2) “Reasonable administrative costs,” which includes administrative fees, reason *1144 able expenses and costs associated with experts and any studies, and attorney’s fees.
Subsection (c)(2), "Prevailing party," was renumbered as subsection (c)(4), and “civil proceeding” was changed to "the proceeding.”
Subsection (c)(3), "Civil actions,” defining a "civil proceeding,” was deleted, and subsections (c)(5) and (c)(6), which separately define "Administrative proceedings” and "Court proceedings,” were added.
Subsection (c)(4), “Position of the United States," was renumbered as subsection (c)(7). In Paragraph (A), "civil proceeding” was changed to "judicial proceeding;” paragraph (B) was deleted, and a new paragraph (B) with subparagraphs (i) and (ii) was added.

. Under 7430 (1982), the prevailing party was required to establish that the position of the United States was "unreasonable.” The present standard is "not substantially justified.”

. Although the standard has changed from "reasonable” to "substantially justified,” the standard is still measured by "reasonableness”: "Substantially justified” means "justified to a degree that could satisfy a reasonable person.” Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

. The parties now agree that the United States’ position in the administrative proceeding was not substantially justified and that a portion of the attorneys' fees award to Petitioners was proper.